IRVINE, APPELLEE, *v.* THE STATE OF OHIO, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW, APPELLANT, ET AL.

[Cite as Irvine *v.* Unemployment Comp. Bd. of Review
(1985), 19 Ohio St. 3d 15.]

(No. 84-1938—Decided August 9, 1985.)

*Tuccillo, Wilson & Slater* and *James W. Slater,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Dwight Tillery, Howard M. Sanders* and *Fred J. Pompeani,* for appellant.

WRIGHT, J. The issue before this court is whether an employee has quit her work without just cause within the meaning of R.C. 4141.29 (D)(2)(a) when that employee voluntarily resigns due to health problems although the employee is physically capable of pursuing and maintaining other available full-time employment with her employer and fails to do so.

R.C. 4141.29(D)(2)(a) establishes the necessary criteria to obtain unemployment compensation benefits for those who leave their jobs. In pertinent part it provides:

"(D)   * * * [N]o individual may serve a waiting period or be paid benefits * * *:

"* * *

"(2)   For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

The claimant has the burden of proving her entitlement to unemployment compensation benefits under this statutory provision, including the existence of just cause for quitting work. *Shannon* v. *Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53 [44 O.O. 75]; *Canton Malleable Iron Co.* v. *Green* (1944), 75 Ohio App. 526 [31 O.O. 304]; 54 Ohio Jurisprudence 2d (1962), Unemployment Compensation, Section 35.

The term "just cause" has not been clearly defined in our case law. We are in agreement with one of our appellate courts that "[t]here is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10, 12 [73 O.O.2d 8].

The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is "to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis *sic.*) *Leach* v. *Republic Steel Corp.* (1964), 176 Ohio St. 221, 223 [27 O.O.2d 122]; accord *Nunamaker* v. *United States Steel Corp.* (1965), 2 Ohio St. 2d 55, 57 [31 O.O.2d 47]. Likewise, "[t]he act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." *Salzl* v. *Gibson Greeting Cards* (1980), 61 Ohio St. 2d 35, 39 [15 O.O.3d 49].

We are in basic agreement with the court of appeals below that, in determining "just cause" as that term is construed by *Peyton* and *Salzl,* *supra,* the source or cause of the physical inability to work may be of no import, "at least in the absence of evidence of the employee's culpability in sustaining or incurring the condition."[1] We do not agree, however, with that court's finding that claimant had just cause for quitting her work, thereby entitling her to unemployment compensation benefits.

The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest

---

[1] We need not analyze whether claimant's health problems are related to her employment in order to resolve the instant case. Whether claimant's medical problems are causally connected to her employment is a matter of workers' compensation law. The question of whether claimant is entitled to workers' compensation benefits is not before us and we do not reach that issue.

weight of the evidence. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167]. Like other courts serving in an appellate capacity, we sit on a court with limited power of review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. *Hall* v. *American Brake Shoe Co.* (1968), 13 Ohio St. 2d 11, 13 [42 O.O.2d 6]. The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69, 71 [31 O.O.2d 108]. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. *Craig* v. *Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260 [38 O.O. 356]. Moreover, "[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision." *Charles Livingston & Sons, Inc.* v. *Constance* (1961), 115 Ohio App. 437, 438 [21 O.O.2d 65].

In the instant case, our review of the record supports the decision of the board denying claimant unemployment compensation benefits. We agree with the court of appeals below that claimant terminated her employment with N.E.O.D.C on the advice of Drs. Crano and Narraway, and that claimant apprised N.E.O.D.C. of her medical condition and physical limitations. We do not agree with the court of appeals' finding that claimant attempted to work with N.E.O.D.C. to obtain a less demanding position or that claimant gave N.E.O.D.C. sufficient timely notice to afford it the opportunity of finding satisfactory alternative employment for her. In fact, the record indicates that the exact opposite is true. The referee expressly stated, in his decision, that:

"Claimant took the two doctors' releases to N.E.O.D.C. and immediately resigned her employment. There was no conversation between claimant and the employer with respect to whether there were any jobs available within the facility which claimant could perform within the medical restrictions. There may have been some work available for the claimant at the Center, but the employer was not given the opportunity to look into the matter.

"* * *

"* * * The facts presented above indicate claimant quit her employment without inquiring as to whether any other jobs were available which could conform to her medical restrictions."

In light of the foregoing facts, we do not believe that claimant has carried her burden of establishing just cause for her resignation. Claimant was not "involuntarily" unemployed as required by *Leach* v. *Republic Steel Corp., supra,* and *Nunamaker* v. *United States Steel Corp., supra.* Nor did claimant satisfy the test we articulated in *Salzl* v. *Gibson Greeting Cards, supra,* at 39, that in order to recover unemployment compensation benefits, an employee must be "* * * able and willing to work, but was

temporarily without employment through no fault or agreement of his own." Claimant was able to work, but was not willing to do so. She was unemployed because she chose to resign her position with N.E.O.D.C. Claimant's medical condition, which permitted full-time work, and her resultant resignation from N.E.O.D.C., did not justify her failure to pursue alternative employment with N.E.O.D.C. Nor did claimant prove that such alternative positions existed, but were not offered by her employer.

We conclude that the foregoing findings of fact, as determined by the Bureau of Employment Services and the board, and as approved by the trial court below, are not unlawful, unreasonable, or against the manifest weight of the evidence. Claimant therefore is not entitled to unemployment compensation benefits. In sum, we hold that an employee's voluntary resignation on the basis of health problems is without just cause within the meaning of R.C. 4141.29(D)(2)(a) when the employee is physically capable of maintaining a position of employment with the employer, but fails to carry her burden of proving that she inquired of her employer whether employment opportunities were available which conformed to her physical capabilities and same were not offered to her by the employer.

*Judgment reversed.*

LOCHER, HOLMES and C. BROWN, JJ., concur.

C. BROWN, J., concurs separately.

CELEBREZZE, C.J., SWEENEY and DOUGLAS, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. The result we reach today is compelled by the narrow scope of review from fact-finding boards and tribunals concerning determination of purely factual questions by the fact-finder granted to this court and to our intermediate courts of appeal by a long line of legal precedents thoroughly and cogently examined and discussed in the majority opinion starting with *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511 [36 O.O. 167].

Unfortunately this court has disregarded this lawful, proper and narrow scope of review possessed by a court of appeals and by this court in appellate review of zoning commission and zoning board of appeals decisions applying local zoning laws. See, *e.g., Reed* v. *Rootstown Twp Bd. of Zoning Appeals* (1984), 9 Ohio St. 3d 54, dissent at 57-62; *Petti* v. *Richmond Heights* (1983), 5 Ohio St. 3d 129, dissent at 132-133; *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238, dissent at 243-244; *Leslie* v. *Toledo* (1981), 66 Ohio St. 2d 488 [20 O.O.3d 406], dissents of Justices

William B. Brown and Paul W. Brown, at 493-496; *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93 [20 O.O.3d 88], dissent at 100-105.

In *Consolidated Mgmt., Inc., supra,* the dissent at 243-244 recognized that a reversal of the court of appeals in an R.C. Chapter 2506 appeal caused this court to function as a "super zoning board of review." In *Reed* v. *Rootstown, supra,* at 57-62, it was pointed out that the common pleas court had competent, substantial factual support within its proper scope of judicial review to reverse a decision of a board of zoning appeals which denied a variance, and that, by contrast, the court of appeals and this court have no fact-finding *de novo* trial powers.

In *Kisil* v. *Sandusky* (1984), 12 Ohio St. 3d 30, we applied the correct standards of appellate review in zoning cases. We stated at 34 that the broad scope of review of the common pleas court requires it "[w]hen a zoning ordinance is enforced in an unreasonable and arbitrary manner * * * pursuant to R.C. Chapter 2506, to reverse the findings of the board of zoning appeals. The scope of review by the trial court is set forth in R.C. 2506.04, which requires the court to examine the 'substantial, reliable and probative evidence on the whole record.' " By contrast, again at 34, we emphasized the limited scope of review of the court of appeals stating:

"An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."

The dissent in *Kisil, supra,* fails to recognize this polestar principle of limited scope of review possessed by the court of appeals and this court and would elevate these courts to the status of super boards of zoning appeals.

In the area of an R.C. Chapter 2506 administrative appeal, involving termination of employment of a housing authority employee, in *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202 [12 O.O.3d 198], we likewise explained at 205-208, that the scope of review of the common pleas court is not *de novo* but often in fact resembles a *de novo* proceeding, but, that the scope of review of the court of appeals is much narrower and is limited to " 'questions of law pursuant to sections 2505.01 to 2505.45, inclusive, of the Revised Code.' " Cf. *Cincinnati Bell* v. *Glendale* (1975), 42 Ohio St. 2d 368 [71 O.O.2d 331].

In *Nunamaker* v. *Bd. of Zoning Appeals* (1982), 2 Ohio St. 3d 115, 119, this court properly recognized the lack of judicial power of the court of appeals and of this court to interfere upon appeal with a zoning board of appeals decision to grant a proposed use exception. The common pleas court affirmance of the board's action was supported by the preponderance of substantial, reliable and probative evidence and was not arbitrary, capricious or unreasonable. We did not permit the court of appeals to substitute its judgment for that of the common pleas court.

By the same parity of reasoning we correctly determine that the court of appeals here exceeded its judicial power of review under R.C. Chapter 2506 when it reversed the decisions of the common pleas court and the board of review and through its reversal interfered with the fact-finding functions of those two bodies.

Just as a court of appeals and this court should not be a super zoning board of review, as we have often stated, this court and the court of appeals likewise should not be a super unemployment compensation board of review.