### Henize v.
### Giles, Administrator
*[Cite as 6 AOA 72]*

*Case No. 742*
*Highland County, (4th)*
*Decided August 9, 1990*

*Howard D. Fields, Rural Legal Aid Society, Hillsboro, Ohio, for Appellant.*

*Anthony J. Celebrezze, Jr., Ohio Attorney General, and Patrick K. Wilson, Assistant Attorney General, Columbus, Ohio, for Appellees.*

HARSHA, J.

This is an appeal from a judgment entered by the Highland County Court of Common Pleas affirming a decision of the State of Ohio, Unemployment Compensation Board of Review which denied the application of Barbara Henize, claimant-appellant, for unemployment compensation benefits.

Appellant assigns the following as her sole assignment of error:

"THE TRIAL COURT ERRED IN SUSTAINING THE BUREAU'S DENIAL OF APPELLANT'S CLAIM FOR THE REASON THAT THE TRIAL COURT EMPLOYED THE WRONG STANDARD IN ASSESSING JUST CAUSE TO QUIT. THE JUDGMENT IS THEREFORE UNLAWFUL AND MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE."

Appellant was employed by Hercules Trouser Company, Inc. in Hillsboro, Ohio from May 15, 1977 until August 24, 1981. On August 28, 1981, appellant filed an application for unemployment compensation benefits for the week ending August 24, 1981. On September 22, 1981, an administrator for the Ohio Bureau of Employment Services issued a decision determining that appellant had quit her job without just cause and, consequently, denied her application for unemployment compensation benefits. Upon appellant's request for reconsideration, the administrator issued an October 29, 1981 decision affirming the September 22, 1981 decision.

Upon appellant's appeal from the adverse reconsideration decision, a hearing was held before a referee of the State of Ohio, Unemployment Compensation Board of Review, at which the following pertinent evidence was adduced. On or about August 17, 1981, H.T. Breeden, the manager of the Hercules Trouser Co., Inc. plant at which appellant was employed as a presser, attended a meeting with appellant's foreman, Joe Rhoades. At this meeting, a new procedure was enacted whereby inspectors placed pieces of tape on mistakes made by pressers so that they could correct their own mistakes. According to Henize, she was not informed of this new procedure on that date.

On August 18, 1981, appellant filed a grievance through Doralyn Rogers, the union steward at the plant, in which she complained that work

that was coming to her from other employees was bad because of inferior sewing and material. Appellant testified that these deficiencies in workmanship slowed down her own work and decreased the amount of money she earned, which was on a piece rate scale, due to her having to press the errors caused by other employees. She had filed similar grievances during the course of her employment with Hercules Trouser Company, Inc.

On that same date, August 18, 1981, Breeden observed appellant pressing a pair of pants that had a piece of tape on them. According to appellant's testimony, Breeden began yelling at her and told her to take the piece of tape off before she pressed the pants. Appellant testified that she was unaware of the recently enacted plant policy that utilized tape to indicate repairs to be made by the employees. Appellant attempted to steam off the tape and when Breeden yelled at her to pull it off instead, appellant pulled the tape off. Appellant was given a warning slip for "[a]n uncooperative attitude which is detrimental to your best productive efforts, as evident by your actions." Appellant noted that she had not been reprimanded by her foreman.

Appellant testified that she then started to leave the plant prior to her shift's completion but was stopped by her foreman. Appellant returned to work and advised Breeden that she was resigning from her job, effective in two weeks time. Breeden accepted her resignation. According to appellant, her reasons for resigning included the unbearable heat of the workplace which was exacerbated by the dearth of fans, the harassment by Breeden, the failure of the employer to address her grievances concerning deficient work by other employees, the failure of the employer to repair her press despite repeated complaints by appellant, and a disagreement over appellant being yelled at by Breeden for missing one-half of a workday even though other employees were "taking off when they want[ed] to" and were not reprimanded.

On August 19, 1981, appellant advised the union steward that she desired to withdraw her resignation and asked Rogers to request Breeden to talk to appellant about this matter. Rogers testified that she then advised Breeden that appellant wanted to withdraw her August 18, 1981 resignation and did not want to leave, and Breeden told Rogers that he had already accepted appellant's resignation and had nothing to say. Rogers further testified that, at times, Breeden would yell and become offensive when handling

problems. On August 24, 1981, appellant approached Breeden, apologized for her behavior on August 18, 1981, and requested a leave of absence. Mr. Breeden told appellant that as far as he was concerned, appellant could leave right then. Appellant worked until the end of her shift on August 24, 1981 and never returned to work after that date. Appellant testified that she had requested a leave of absence on August 24, 1981 because she was "nervous and upset" and thought that she "could work something out." Breeden testified that any separation of appellant from employment with Hercules Trouser Company, Inc. was not due to poor work on the part of appellant but was "just because the claimant wanted to quit."

On December 18, 1981, the referee issued a decision which affirmed the administrator's denial of appellant's claim for unemployment compensation benefits. The referee's decision includes the following pertinent language:

"A careful review of the record reveals claimant quit her employment with Hercules Trouser Company when she left work on August 24, 1981. Claimant had submitted an oral two week resignation approximately one week prior to this date. Claimant quit her employment prior to the expiration of her resignation. Claimant had the opportunity to work another week. Claimant had originally submitted her resignation because she was dissatisfied with working conditions and believed she was being harassed (sic) and treated unfairly by the employer. *The law requires that an individual's unemployment be involuntary. Claimant has not established that she had no other recourse but to quit her employment. Claimant's actions in attempting to rescind her resignation indicate that she did not believe she had no other recourse but to quit her employment. Under these circumstances, it must be held that claimant quit work with Hercules Trouser Company, Inc., without just cause.*" (Emphasis added).

On February 22, 1982, the Unemployment Compensation Board of Review disallowed appellant's application to institute a further appeal from the December 18, 1981 decision of the referee. On March 12, 1982, appellant filed a notice of appeal from the board's decision to the court below. On November 8, 1981, appellant filed a brief in the court below wherein she asserted that the referee and the board erred in (1) allowing a representative of the employer to participate in the hearing although such representative was not licensed to practice law; (2) the

decisions of the referee and board were against the manifest weight of the evidence; and (3) the referee and board applied an erroneous legal standard in determining that appellant had quit work with Hercules Trouser Company, Inc., without just cause. On August 11, 1983, the court below found appellant's unauthorized practice of law argument to be meritorious and entered judgment remanding the case to the board for a new hearing with the employer's case to be presented by a person licensed to practice law in Ohio.

Upon appeal of the lower court's August 11, 1983 judgment, this court affirmed the common pleas court's reversal and further declined the board's invitation to determine if the evidence, excluding that developed by the employer's non-attorney representative, would support the order, since such a process would involve resolution of factual issues which were within the province of the board. *Henize v. Giles* (Jan. 14, 1985), High. App. No. 532, unreported. The Ohio Supreme Court in *Henize v. Giles* (1986), 22 Ohio St. 3d 213, reversed the judgments of the lower court and this court and remanded the case to the Highland County Court of Common Pleas to address the other arguments raised by appellant's appeal. On August 7, 1989, the lower court filed an "OPINION" which it declared to be a *"final appealable order."* The court's entry affirmed the decision of the referee denying appellant's claim for unemployment compensation benefits. The lower court stated that the referee's decision was "supported by competent, credible evidence" but did not explicitly address appellant's contention on appeal that the referee had acted unlawfully by utilizing an improper legal standard.

Appellant's sole assignment of error on appeal asserts that the trial court erred in sustaining the board's denial of her claim for unemployment compensation benefits where the referee[1] employed an improper legal standard in assessing just cause to quit. If a reviewing court finds that a decision of the Board of Review was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise, such court shall affirm the decision. R.C. 4141.28(O); *Rieth v. Admr., Ohio Bureau of Emp. Serv.* (1988), 43 Ohio App. 3d 150, 151-152; *A.P. Parts Co. v. Ohio Bur. of Emp. Serv.*(1988), 44 Ohio App. 3d 190.

R.C. 4141.29 provides, in pertinent part, as follows:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter.

"***

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"***

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work...

"***"

The claimant has the burden of proving her entitlement to unemployment compensation benefits under this statutory provision including the existence of just cause for quitting work. *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 17; *Shannon v. Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53; *Canton Malleable Iron Co. v. Green* (1944), 75 Ohio App. 526. Each case must be considered upon its own merits with the applicable standard for determining the existence of just cause being that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. *Irvine, supra* at 17; *Daugherty v. Bur. of Employment Services* (1984), 21 Ohio App. 3d 1; *Sachs Corp. of U.S.A. v. Rossman* (1953), 9 Ohio App. 3d 188, 190; *Peyton v. Sun T.V.* (1975), 44 Ohio App. 2d 10, 12.

Moreover, the Ohio Supreme Court in *Irvine* further noted as follows at p. 17:

"The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is 'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' (Emphasis sic). *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223 [27 O.O. 2d 122]; accord *Nunamaker v. United States Steel Corp.* (1965), 2 Ohio St. 2d 55, 57 [31 O.O. 2d 47]. Likewise, '[t]he act was intended to provide financial assistance to an

individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St. 2d 35, 39 [15 0.0. 3d 49]."

An initial issue to be considered in determining whether the referee of the Board of Review employed an improper legal standard herein concerns the referee's statement in his December 18, 1981 decision that "[t]he law requires that an individual's unemployment be involuntary." Appellant argues that application of the foregoing standard would result in the denial of unemployment compensation benefits in all cases involving an employee quitting or resigning, since the act of quitting or resigning is, in essence, a voluntary one. To a certain extent, appellant is correct since the term "quit" in Ohio law connotes a *voluntary* act by an employee not controlled by the employer. *Caudill v. Ashland Oil Co.* (CP 1983), 9 Ohio Misc. 2d 16; see also *Dudley v. Morris* (1966), 6 Ohio App. 2d 187. However, as noted by the Ohio Supreme Court in *Irvine*, the "just cause" standard should be considered in conjunction with one of the purposes underlying the Unemployment Compensation Act, i.e. to enable employees *"involuntarily* unemployed" to subsist on a reasonably decent level. This appears to follow from the introductory language of R.C. 4141.29 which states that "[e]ach eligible individual shall receive benefits as compensation for loss of remuneration due to *involuntary* total or partial unemployment." (Emphasis added.)

Nevertheless, it should be emphasized that the foregoing statutory language is explicitly made "subject to the conditions stipulated in this chapter." One of the "conditions" stipulated in R.C. 4141.29(A) and (D)(2)(a) allows unemployment compensation benefits to be paid to employees who quit their work with just cause. These provisions can best be reconciled by holding that a person who has just cause to quit work, i.e. that which, to an ordinarily intelligent person, is a justifiable reason for quitting, where that cause is related in a substantial way with the person's ability to perform in his employment capacity, is essentially "involuntarily" unemployed. Cf., e.g. Klein, Unemployment Insurance in Ohio (1979), 11 To1. L. Rev. 27, 65. Based upon the foregoing, the referee's mere use of the term "involuntary" in the course of his decision does not, by itself, render such decision erroneous.

However, the referee in the case at bar further utilized language that "[c]laimant has not established that she had no other recourse but to quit her employment." The standard of just cause for quitting employment set forth in *Peyton, supra,* and adopted by the Ohio Supreme Court in *Irvine, supra,* is the standard to which the Board of Review must adhere when determining whether an employee should be denied unemployment compensation benefits, and thus a claimant need not show a "compelling reason which made it mandatory to quit." *Sachs, supra* at 190-191; *Taylor v. Board of Review* (1984), 20 Ohio App. 3d 297; *Ours v. Administrator*, OBES (Aug. 27, 1986), Ross App. No. 1213, unreported, p. 6; *Prince v. Washington Distributors, Inc.* (C.P.1977), 8 CCH Ohio Unemp. Ins. Rep. 38, 191, Paragraph 1975.30; Klein, *supra* at 65. The standard utilized by the referee and the Board of Review herein, one requiring establishment by the claimant of no other recourse but to quit employment in order to justify entitlement to unemployment compensation benefits, was not an application of the *Peyton-Irvine* just cause to quit standard, and consequently, the standard used in the case at bar was improper, erroneous, and not in accordance with the applicable law.[2]

This error cannot be considered to be harmless in that the evidence adduced at the hearing before the referee could have conceivably supported a finding of just cause to quit work. The record herein includes evidence that appellant's employer had repeatedly failed to resolve her grievances concerning inferior work by other employees, failed to repair her machine despite many complaints by appellant, appellant had been verbally harassed by the plant manager, and that the plant manager had applied discipline with respect to employees in a discriminatory fashion. The trier of fact could have inferred that these conditions were present on August 24, 1981, the last date of appellant's employment and that, if this testimony was credited, it would constitute a justifiable reason for leaving. *Peyton, supra; Irvine, supra.* Therefore, application of an improper standard by the referee and the board of review was unlawful and not harmless error.

In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order; the appellate court must determine only if the trial court has abused its discretion and absent an abuse of discretion on the part of the trial court, a court of appeals must affirm a trial court's judgment. *Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 260-261. In the case at bar, the trial court abused

its discretion in failing to reverse the decisions of the referee and Board of Review in that they were "unlawful" pursuant to R.C. 4141.28(D). The power of courts to reverse and vacate decisions of the Board of Review includes the power to remand the case to the Board for further proceedings. *Hessley v. Giles* (1985), 27 Ohio App. 3d 184; *Superior Metal Products, Inc. v. Admr., Ohio Bureau of Employment Services* (1975), 41 Ohio St. 2d 143, 146. Accordingly, for the foregoing reasons, appellant's assignment of error is sustained, the judgment of the trial court affirming the Board of Review's denial of appellant's application for unemployment compensation benefits is reversed, and the cause is remanded to the Board of Review for further proceedings consistent with this opinion.[3]

GREY, J., concurs in judgment and opinion.

ABELE, P.J., concurs in judgment and opinion.

---

[1] Although appellant's assignment of error states that the "TRIAL COURT" employed the wrong standard, it is apparent from a reading of her entire appellate brief that, notwithstanding the phrasing of her assignment of error, her actual contention is that the referee of the Unemployment Compensation Board of Review applied an unlawful standard, and thus, the board of review and the trial court erred in affirming the referee's denial of unemployment compensation benefits.

[2] As noted by appellant, although *Irvine's* adoption of the *Peyton* just cause standard came four years following the referee and Board of Review's decisions herein, the *Peyton* case preceded these decisions.

[3] Appellant further argues that the decisions of the referee and Board of Review were against the manifest weight of the evidence. The *Irvine* court noted as follows at p. 18:

"The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore v. Bd. of Review* (1965), 2 Ohio App. 2d 69, 71 [31 O.O.2d 108]. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." *Craig v. Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260 [38 O.O.356]. Moreover, '[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.' *Charles Livingston & Sons, Inc. v. Constance* (1961), 115 Ohio App. 437, 438 [21 O.O.2d 65]."

In the case at bar, the evidence was such that reasonable minds could reach different conclusions as to whether or not appellant had quit or been discharged with or without just cause. *A fortiori*, appellant's argument in this regard is meritless.