DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Betty J. Bacalu appeals from the order of the Summit County Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Board of Review to deny her unemployment benefits. We affirm.
Lorantffy Care Center in Akron, Ohio hired appellant Betty J. Bacalu, a registered nurse, on September 7, 1993. Bacalu's employment with Lorantffy ended on February 18, 1994. On May 17, 1994, Bacalu applied to the Ohio Bureau of Employment Services (OBES) for determination of her rights to unemployment benefits. Bacalu claimed she was constructively discharged from her employment at Lorantffy without cause. Lorantffy maintained Bacalu quit her job voluntarily.
On June 13, 1994, the Administrator of OBES found Lorantffy discharged Bacalu without cause and allowed unemployment benefits. Upon Lorantffy's request for reconsideration, the Administrator affirmed the decision on August 18, 1994. Lorantffy then appealed to the Ohio Unemployment Compensation Board of Review. The Board conducted telephone hearings on January 4, 1995 and February 7, 1995 and heard testimony from the following individuals: Bacalu; Karen Kemerer, director of nursing for Lorantffy; Elizabeth Domitor, executive director of Lorantffy; Liz Schmidt, an administrator at Lorantffy; and Gerry Basso, a social worker discharged from Lorantffy. On February 22, 1995, the Board reversed the Administrator's decision, finding that Bacalu quit her employment without just cause and therefore was not entitled to unemployment benefits. Bacalu filed an application for further review, which the Board denied on May 18, 1995.
Pursuant to R.C. 4141.28(O)(1), Bacalu timely appealed the Board's decision to the Summit County Court of Common Pleas. On March 24, 1997, the trial court affirmed the decision of the Board. This appeal followed.
In her sole assignment of error, Bacalu alleges "[t]he court of common pleas committed reversible error in holding that the board of review's decision was supported by the evidence." We find her assignment of error lacking in merit.
Neither the trial court nor this court may reverse an unemployment compensation determination by the Board unless the determination is "unlawful, unreasonable, or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Ohio Bur. ofEmp. Serv. (1995), 73 Ohio St.3d 694, 697. The duty of the courts of review is to ascertain whether the Board's decision is supported by the evidence in the record. Id. at 696. If evidence exists to support the Board's conclusion, this court must not substitute its own findings for those of the Board. Durgan v.Ohio Bur. of Emp. Serv. (1996), 110 Ohio App.3d 545, 551. Review of the record in the case sub judice indicates the Board's conclusions were supported by the evidence presented.
The Unemployment Compensation Act, which provides the basis for Bacalu's claim, is designed to protect individuals "`who had worked, [were] able and willing to work, but [were] temporarily without employment through no fault or agreement of [their] own.'"Irvine v. Unemployment Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15,17, quoting Salzl v. Gibson Greeting Cards (1980), 61 Ohio St.2d 35,39. The act allows unemployment compensation benefits for people who quit their jobs with just cause. See R.C. 4141.29(A) and (D)(2)(a). "Just cause" for quitting one's job constitutes what "an ordinarily intelligent person" would find to be "a justifiable reason for quitting, where that cause is related in a substantial way with a person's ability to perform in his employment capacity[.]" Henize v. Giles (1990), 69 Ohio App.3d 104,111.
Bacalu claims she quit her employment at Lorantffy for just cause. She maintains she was harassed by Lorantffy administrators after disciplining aides for patient abuse, a duty she claims was included in her job requirements. However, Bacalu presented nothing, other than her own testimony, to indicate that she possessed the authority to discipline aides. Furthermore, Bacalu failed to offer any evidence of harassment. Several Lorantffy administrators testified Bacalu's duties were confined to inservice coordination, and the disciplining of staff was to be handled solely by the Director of Nursing. No Lorantffy administrator remembered taking any action against Bacalu for disciplining aides, but they stated that if Bacalu was told not to discipline aides, it was because such a duty was not part of her job description.
Bacalu further argues she was given the title of Assistant Director of Nursing upon hiring. She claims Lorantffy administrators promised she would be trained to become the Director of Nursing. A plaque reading "Assistant Director of Nursing" was placed on the door of her office. The evidence presented indicates Bacalu submitted her resignation after becoming upset when the plaque was removed from her door. The Lorantffy administrators testified that Bacalu was never promised that she would be trained to become the Director of Nursing. Two of the administrators testified that a new Director of Nursing was hired shortly after Bacalu began her employment, and no plans existed for Bacalu to assume that position. After the hiring of the new Director of Nursing, each of the administrators maintained Bacalu was no longer regarded as the Assistant Director of Nursing. Each testified that Bacalu was told on numerous occasions to focus on her duties as inservice coordinator. Both Karen Kemerer, the new Director of Nursing, and administrator Liz Schmidt testified Bacalu herself ordered the maintenance staff to place the plaque on her office door. Schmidt stated she told the maintenance staff to remove the plaque after the new Director of Nursing was hired, because Bacalu no longer held that title.
Bacalu maintains the aforementioned conditions forced her to resign her position at Lorantffy. The Board disagreed and stated the following in its hearing report:
 [Bacalu] accepted the position at Lorantffy Care Center as an Assistant Director of Nursing and Inservice Coordinator with hopes and expectations that she would receive the on-the-job training necessary to function effectively as an Assistant Director of Nursing and to become qualified to be Director of Nursing two or three years later. [Bacalu] did not receive the training that she hoped she would receive. A new Director of Nursing was hired and the new Director of Nursing saw [Bacalu] as Assistant Director of Nursing in title only. The Director of Nursing, on several occasions, reminded [Bacalu] that she was no longer to function as Assistant Director of Nursing. There was no change in [Bacalu's] pay. [Bacalu] was further informed that she should concentrate on her duties as Inservice Coordinator. [Bacalu] continued to hold onto vestiges of her position as Assistant Director of Nursing and when a plaque was removed from the door, she resigned. The Hearing Officer concludes that there was no substantial immaterial [sic] breach in the contract of hire, and that the work continued to be suitable work for [Bacalu], that she did not have just cause * * * and therefore she quit her employment without just cause. * * * * *
We find the evidence in the record supports the findings and conclusions of the Board. Bacalu failed to establish just cause for resigning her position at Lorantffy. Thus, her assignment of error is overruled. The order of the Summit County Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Board of Review to deny unemployment benefits to Bacalu is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court
of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 Exceptions. _________________________________ JOHN W. REECE
FOR THE COURT
SLABY, P. J.
DICKINSON, J.
CONCUR