OPINION
{¶ 1} This is a timely appeal from a judgment entered by the Mahoning County Court of Common Pleas upholding a decision of the Ohio Unemployment Compensation Review Commission ("Commission") to deny Kathy A. Hurd ("Appellant") unemployment compensation benefits. In so holding, the trial court overruled the magistrate's recommendation that the court reverse the Commission's decision and award such benefits. For the reasons that follow, this Court affirms the judgment of the trial court.
 {¶ 2} Appellant worked for Danieli Corporation from November of 1979 until December 1999, when she quit her job there as a secretary. Prior to December 13, 1999, Appellant was stationed at the company's Austintown location near her home in Youngstown. In December of 1999, the company closed its Austintown office and consolidated all of its operations in Pennsylvania.
 {¶ 3} Appellant accepted a secretarial position with the company at its facility in Cranberry, Pennsylvania, more than fifty miles from her home. For some time, Appellant managed the extended commute. After several months, however, the travel became too wearing and, in January of 2000, she decided to quit. When she advised the company's management of her decision, they offered her an additional $2,500.00 annually to help defray the costs she incurred because of the extra travel. The company also agreed to transfer her from the payroll and accounting office to a position in the less stressful parts department.
 {¶ 4} Appellant continued to work for the company, but ultimately, persistent stress, expense, and family pressures attending her lengthened commute, caused Appellant to reconsider her decision to remain with the company. Appellant met with her supervisor in an unsuccessful attempt to reach a mutually beneficial accommodation of her situation. On June 23, 2000, Appellant submitted her two-week notice advising the company of her intent to resign.
 {¶ 5} Appellant applied for unemployment compensation with the Department of Jobs and Family Service's Bureau of Employment Services on July 10, 2000. That claim was disallowed on August 2, 2000. The Bureau's administrator denied her application for benefits after concluding that Appellant quit her job without just cause. Appellant's request for a redetermination was subsequently denied. Appellant thereafter appealed the Board's denial to the Commission. After a telephone hearing, a hearing officer issued a decision disallowing Appellant's request for review. (Notice of Administrative Review, filed Dec. 7, 2000, Ex. A).
 {¶ 6} On December 7, 2000, Appellant appealed the Commission's decision to the Court of Common Pleas. On May 7, 2001, the trial court's magistrate issued a detailed and well-written opinion recommending that the trial court reverse and vacate the Commission's decision. Reasoning that the Commission's decision violated R.C. § 4141.28(O)(1), the magistrate concluded that, "the decision of the Review Commission that appellant did not have just cause to quit her employment was unlawful, unreasonable and against the manifest weight of the evidence." (Magistrate's Order, May 7, 2001).
 {¶ 7} The Ohio Department of Job and Family Services ("Appellee") filed objections to the magistrate's decision with the trial court on behalf of the Commission. On September 7, 2001, the trial court entered judgment overruling the magistrate and affirming the Commission's decision to disallow Appellant's request for unemployment compensation benefits. Appellant now appeals the trial court's order to this Court, arguing as follows:
 {¶ 8} "The trial court erred when it found that Appellant Kathy A. Hurd terminated her employment without just cause."
 {¶ 9} Appellant maintains that the Commission's determination that she quit her position without just cause was unlawful, unreasonable and contrary to the manifest weight of the evidence. Appellant argues that by denying her request for unemployment compensation, the Commission has essentially punished her for trying to keep a job she had held for twenty years. Certainly, it was not her fault that Danieli decided to consolidate its facilities and thereby force her to extend her daily commute from six miles each way to more than fifty. According to Appellant, had she simply quit at the time of the consolidation, there would have been no question about her entitlement to benefits and such a result is simply arbitrary and contrary to public policy.
 {¶ 10} While this Court does not dispute that Appellant may make some valid points, we must, nevertheless, affirm the judgment entered by the trial court.
 {¶ 11} At the outset, we are compelled to note that Appellant's challenge to the trial court's decision in this case faces an arduous standard of review. This Court cannot reverse the trial court's decision to uphold the Commission's just cause determination unless it is unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696-97, 653 N.E.2d 1207; and Laukert v. Ohio ValleyHosp. Assn. (1996), 115 Ohio App.3d 168, 171-172.
 {¶ 12} In addition, this Court has no authority to reverse a final decision of the Commission under a manifest weight of the evidence analysis if there is some competent evidence to support it. Binger v.Whirlpool Corp. (1996), 110 Ohio App.3d 583, 589, 674 N.E.2d 1232. Where the Commission might reasonably decide a case either way, a court of review has no authority to upset the board's decision. Further, the Commission's decision will not be reversed simply because reasonable minds might reach different conclusions. Hasch v. Vale, 5th Dist. No. 2001CA361, 2002-Ohio-3092; citing, Irvine v. Unemployment Comp. Bd. ofReview (1985), 19 Ohio St.3d 15, 17. 482 N.E.2d 587.
 {¶ 13} Nevertheless, while appellate courts cannot make factual findings or determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by some evidence in the record. Id. The claimant has the burden of proving her entitlement to unemployment compensation benefits under this statutory provision, including the existence of just cause for quitting work. Henize v. Giles
(1990), 69 Ohio App.3d 104, 110, 590 N.E.2d 66.
 {¶ 14} Under R.C. § 4141.29(D)(2)(a), a candidate is ineligible for unemployment compensation benefits if that individual quit work without just cause or was discharged for just cause. Just cause has been defined as, "that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, supra; quoting, Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12,335 N.E.2d 751. Just cause to terminate employment exists if a person of ordinary intelligence would have concluded that the circumstances justified terminating the employment. Jenkins v. Unemployment Comp. Rev.Comm., 4th Dist. No. 00CA11, 2000-Ohio-1995, Warrensville Hts. v.Jennings (1991), 58 Ohio St.3d 206, 207, 569 N.E.2d 489. What constitutes just cause is a question of fact, to be decided by the Commission on a case-by-case basis. Barilla v. Higbee Dept. Stores (April 19, 2000), 9th Dist. No. 98CA7176. citing, Irvine, supra, at 17.
 {¶ 15} Appellant contends, and the magistrate agreed, that given her situation, Appellant had just cause to quit her job at Danieli Corporation. She had worked at the Company's Austintown office for some nineteen years before the company consolidated that office with a plant in Cranberry, Pennsylvania. At that point Appellant resolved that she had two alternatives: 1) she could quit her job, arguably for just cause, and receive unemployment compensation while looking for other work close to home; or 2) she could put up with the now extended commute and continue to work for Danieli. Appellant decided to give the commute a try and remained with the company for another year before she reached the point where she felt she had to quit.
 {¶ 16} Appellant complains that she left her job with Danieli after twenty years because the stress and expense associated with the lengthened commute had become unbearable. As Appellant explained to the hearing officer,
 {¶ 17} "* * * I was coming home with headaches. I was so stressed out that like two to three nights a week, I'd come home, I'd eat a little, fall asleep until the next morning. And I was up and gone before even my kids woke up for school, never saw them, you know. And I mean, that's my family's important to me. You know, and it just seemed like things were just falling apart. Sometimes my kids wouldn't even talk to me because I was just I just turned into a mean person, you know.
 {¶ 18} "And being way out there, I just felt if there was an emergency, my daughters couldn't even count on me. And under these circumstances, I just believe that any ordinary mother with school-aged children would do the same thing I did. And that's what I feel. I'm not a degreed person making big money, but I didn't want to quit a decent paying job (inaudible) benefits. But I I really simply had no other alternative. And I was out of solutions." (Sept. 7, 2000, Commission Telephone Hearing Tr. pp. 13-14).
 {¶ 19} Appellant directs this Court to the magistrate's opinion wherein he concludes that Appellant had just cause to quit her job as a matter of law. Specifically, the magistrate observed:
 {¶ 20} "Appellant should not be punished for attempting to stay employed at the distant workplace. An ordinarily intelligent person should not be expected to continue driving in excess of a hundred miles a day, while eluding semi trucks, deer and other vehicles involved [in] accidents, while paying increased fuel and toll costs and experiencing increased vehicle depreciation, beyond additional compensation. Most importantly, an ordinarily intelligent person should not be expected to continue suffering the physical and emotional stress caused by the long distance commute. As a matter of law, Appellant had just cause to quit her employment in Cranberry, Pennsylvania, under the circumstances, which are not in dispute." (Magistrate's Order, May 7, 2001, p. 9).
 {¶ 21} In reaching this decision, the magistrate relied largely on a similar scenario faced by the employee in Vetanze v. Ohio Bureau ofEmployment Services (June 22, 2000), 7th Dist. No. 99-BA-17. The employee in that case had been laid off from a position he had held at a steel company for seventeen years due to a labor dispute. He then applied for and promptly received unemployment compensation. But six days later the employee found a job paying $8.85/hour at a company in Wooster, Ohio, approximately 100 miles from his home in St. Clairsville. Forgoing the unemployment benefits, Mr. Vetanze took the new position hoping to relocate to the Wooster area. Housing costs there, however, proved to be too expensive. Mr. Vetanze lasted about one week commuting to and from St. Clairsville before quitting the Wooster job. Id. at *2.
 {¶ 22} The Commission denied Mr. Vetanze's application for unemployment benefits filed after he left the Wooster job. As it did in the instant case, the Commission in Vetanze found that the employee did not have just cause to quit. On administrative appeal, the Court of Common Pleas affirmed the denial and Mr. Vetanze sought review in this Court. Concluding that the denial of benefits defeated the purpose of the Unemployment Compensation Act ("Act"), this Court reversed. In so concluding, this Court noted that, "[i]t is clear that an ordinary, reasonable person under similar circumstances could not drive a 200 mile round trip every day for an hourly wage of $8.85. Traveling this distance every day would be hazardous and would pose upon him an unreasonable economic burden." Id. at *5-6. Accordingly, we held that Appellant was entitled to benefits.
 {¶ 23} Like the employee in Vetanze, Appellant argues that the Commission's decision to deny her unemployment benefits essentially penalizes her for accepting a job, or, more accurately, attempting to cope with the involuntary relocation of her position, when she was not otherwise required to do so. (Appellant's Brf. p. 10). Under R.C. §4141.29(E) (F), the Commission must consider the distance of available work from the individual's residence in determining her eligibility for benefits. If the individual would be otherwise qualified to receive benefits, her refusal to accept the new work at a lengthened commute would not preclude her entitlement to those benefits. Accordingly, it is possible that Appellant is correct in contending that she may have been entitled to unemployment compensation benefits had she simply quit when Danieli closed the Austintown plant.
 {¶ 24} However, we must also note that the facts here are distinguishable from the earlier case: Appellant has a shorter commute and her employer made every attempt to accommodate her by giving her more pay and a less stressful position within the company. Thus, the question as to whether her voluntary termination would be justified is entirely fact-based. As noted earlier, neither the court of common pleas nor this Court is entitled to make factual determinations in these administrative appeals. Instead, we must affirm so long as the Commission has some evidence to support its decision.
 {¶ 25} Notwithstanding the facial appeal of Appellant's argument and the magistrate's apparent agreement with it, the trial court and the Commission concluded against compensation based on the facts herein. Essentially, the Commission resolved that despite the efforts of both parties, Appellant's transportation problem could not be accommodated. Accordingly, the hearing officer reasoned, "while claimant may have had good personal reasons for quitting employment with Danieli Corporation, the circumstances do not meet the requirements of the law with respect to just cause for quitting employment." (Decision Disallowing Request for Review, Nov.9, 2000, p. 3).
 {¶ 26} Under Civ.R. 53, the magistrate serves only in an advisory capacity and has no authority to render final judgments affecting the rights of the parties. Takacs v. Baldwin (1995), 106 Ohio App.3d 196,208, 665 N.E.2d 736; citing, Nolte v. Nolte (1978), 60 Ohio App.2d 227,396 N.E.2d 807, paragraph two of the syllabus. The record reflects that the Commission's determination was based on reliable probative evidence. Thus, while reasonable minds might differ over the proper result in this case and even sympathize with the plight Appellant faced, we cannot conclude that the Commission's decision was unreasonable, unlawful, or contrary to the manifest weight of the evidence.
 {¶ 27} Moreover, our examination of Vetanze reveals that the facts are more distinguishable from the instant case than Appellant admits. As earlier stated, there is a considerable difference between Appellant's daily commute and the 200 miles that Mr. Vetanze endured. In fact, Appellant's trip is almost half as long. Further, as Appellant readily concedes, her position at Danieli was a good one. She was at the company for nearly twenty years, and her seniority there earned her four weeks of vacation and a fairly substantial annual salary. Thus, her situation is a far cry from the $8.85 hourly wage in Vetanze.
 {¶ 28} This Court further notes that transportation to and from work is generally found to be the responsibility of the employee. Haynesv. Board of Review (Feb. 5, 1987), 8th Dist. No. 51633; citing, Kontnerv. Board of Review (1947), 148 Ohio St. 614, 76 N.E.2d 611. Accordingly, an employee's decision to quit a job due to transportation difficulties typically does not create just cause under the Unemployment Compensation Act. See, e.g., Salmons v. Board of Review (Dec. 16, 1985), 5th Dist. No. CA 2335 (quitting a job because of car failure is not just cause).
 {¶ 29} Under the circumstances, this Court overrules Appellant's assignment of error and affirms the judgment entered by the Mahoning County Court of Common Pleas.
Donofrio, J., concurs.
Vukovich, P.J., concurs.