[Cite as *Friedel v. Quota*, 2015-Ohio-4060.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

| | |
|---|---|
| Jesse D. Friedel | Court of Appeals No. WM-15-002 |
| Appellee | Trial Court No. 14 CI 114 |
| v. | |
| Eugene F. Quota, Jr., et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: September 30, 2015 |

* * * * *

Mike DeWine, Ohio Attorney General, and Eric A. Baum,
Managing Attorney, for appellee Director, Ohio Department
of Job and Family Services.

* * * * *

**JENSEN, J.**

{¶ 1} In this accelerated appeal, defendant-appellant, the Director of the Ohio

Department of Job and Family Services ("ODJFS"), appeals the January 29, 2015

judgment of the Williams County Court of Common Pleas, which reversed the Ohio

Unemployment Compensation Review Commission's ("UCRC") decision allowing

unemployment compensation benefits to defendant-appellant, Eugene F. Quota, Jr. For the reasons that follow, we reverse the trial court's judgment.

## I. BACKGROUND

{¶ 2} Quota was employed by plaintiff-appellee, Jesse D. Friedel, as a truck driver. On February 7, 2014, Quota quit his job. He applied for unemployment compensation benefits through the ODJFS Office of Unemployment Compensation on February 14, 2014, claiming that his employer subjected him to unreasonable annoyances and that because of the breakdown in the relationship, continuing to work for him would cause extreme hardship. On March 6, 2014, the director made a determination disallowing Quota's application, finding that he had quit without just cause.

{¶ 3} Quota filed a request for appeal on March 20, 2014, challenging the prior determination. He explained that the evening before he resigned, his truck broke down and he was left on the road for four hours in freezing conditions, with winds of 35 miles per hour. He claimed that he requested assistance from Friedel, but Friedel did nothing to help repair the truck because he was intoxicated. According to Quota, he could not call for service because he did not have sufficient funds on his employer-provided debit card to pay for the repairs. Instead Quota sought aid from his son-in-law who had to drive 80 miles in the middle of the night to come help him.

{¶ 4} Friedel responded to Quota's claims. He said that he hired Quota with the expectation that he was capable of handling minor repairs while on the road. He acknowledged that Quota had called him on the evening in question, but he did not have

2.

parts on hand to be of any service to Quota, and he suggested that Quota call his son-in-law because he is employed as a road service tech. Friedel claimed that Quota was only 30 miles away at the time his truck broke down. He also insisted that he had provided Quota with a card with limits of $500 for purchases and $200 for cash advances, thus he had sufficient funds to make necessary repairs. The director affirmed its initial determination disallowing benefits on April 8, 2014.

{¶ 5} Quota appealed the redetermination and jurisdiction was transferred from ODJFS to the UCRC. An administrative hearing took place on May 16, 2014. During the hearing, Quota testified for the first time that he quit his job because Friedel had instructed him to violate federal truck-driving hours-of-service regulations. He testified that he began work at 9:00 a.m. on February 6, 2014, and drove until his truck broke down at 10:30 p.m. Because his truck broke down, he was stranded on the side of the road for several hours and he did not return home until 7:00 a.m. the next morning. He explained that the hours-of-service regulations mandated that he not drive again for 34 hours, or alternatively, that those regulations required him to be off duty for ten hours before driving again. Quota claimed that the next morning, a broker called him to ask if he could make a noon pick-up in Detroit. He told the broker that he could not legally drive at that time and that the broker should contact his employer. At 10:30 a.m., Friedel stopped at Quota's house and told him that he wanted Quota to make the noon pick-up in Detroit, return home for a 10-hour break, then drive to Texas. Quota refused and an

3.

argument ensued. Quota quit. On appeal to the UCRC, Quota submitted his driver logs for February 6 and 7, 2014, in support of his position. Friedel did not respond to Quota's appeal or participate in the hearing.

{¶ 6} The UCRC issued a decision on May 20, 2014, reversing the director's redetermination. It found that Quota had quit for just cause based on Friedel's demand that he violate federal regulations regarding hours of service. It explained:

> As a truck driver, claimant must abide by federal regulations regarding drive time. Claimant was only allowed to drive eleven hours a day and 70 hours in an eight day period. On or about February 7, 2014, at approximately 6:45 am, claimant had exceeded his allowed hours and was required to stay off the road for thirty-four hours. Pursuant to federal regulations, claimant was not permitted to drive a truck until February 8, 2014 at approximately 4:45 pm. However, the owner of the company, Jesse D. Friedel, instructed claimant to break the law by requiring him to drive on February 7, 2014, even though he knew claimant was not supposed to be on the road.

{¶ 7} Friedel filed a request for review on June 9, 2014. In a decision dated July 9, 2014, his request was disallowed. Friedel appealed to the trial court on August 8, 2014.

{¶ 8} On appeal to the trial court, Friedel challenged Quota's credibility. He argued that Quota had completely changed his story regarding his reason for quitting,

4.

raising for the first time his contention that Friedel had demanded that he violate federal trucking regulations. The trial court acknowledged that Quota had not raised the alleged regulation violation until the hearing and that Quota failed to explain why he had not brought this up in the prior two proceedings. It concluded that Quota quit because he was frustrated with Friedel over the incident involving the breakdown of his truck. The trial court held that no ordinary, intelligent person would conclude that this was a justifiable reason for quitting his job, and that the UCRC decision was unreasonable and against the manifest weight of the evidence. The court did not address the merits of Quota's claim that Friedel asked him to violate the hours-of-service regulations, but it commented:

> The purpose of the administrative process below in determining whether an individual is entitled to unemployment compensation benefits as allowed by statute is to determine the truth as to what events led to the separation of an employee from their job. The three step review process is not designed to allow employees and/or employers to test various arguments at each level of review until the new set of claims is successful when the earlier claims had failed. (Emphasis sic.)

{¶ 9} ODJFS appealed the trial court's ruling and assigns the following error for our review:

> When considering an appeal of a Review Commission decision, the decision must be affirmed if some competent, credible evidence in the record supports it. The Review Commission's decision that Mr. Quota quit

with just cause is supported by some competent, credible evidence, *i.e.,* by Mr. Quota's testimony that he was asked to drive in violation of hours-of-service regulations. The trial court was wrong to not consider the hours-of-service issue when reversing the Review Commission.

## II. STANDARD OF REVIEW

{¶ 10} A party may appeal the final determination of the UCRC to a court of common pleas, which shall hear the appeal on the record certified by the commission. R.C. 4141.282(H). The trial court shall reverse the determination only if it finds that "the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence." *Id.*

{¶ 11} The hearing officer is in the best position to determine purely factual questions. *DS Express Carriers, Inc. v. Dixie*, 6th Dist. Erie No. E-12-034, 2013-Ohio-4829, ¶ 4, citing *Irvine v. Unemp. Comp. Bd. of Review,* 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985). To that end, the court must accept the hearing officer's factual findings if there exists competent, credible evidence to support those findings. *Marietta Coal Co. v. Kirkbride*, 2014-Ohio-5677, 26 N.E.3d 852, ¶ 11 (7th Dist.). "[T]hat reasonable minds might reach different conclusions is not a basis for * * * reversal[.]" *Irvine* at 18.

{¶ 12} Appellate courts apply the identical standard of review. *Tzangas, Plakas & Mannos, Attorneys v. Admr., Ohio Bur. of Emp. Servs.,* 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995). Our review must focus on the commission's decision rather than

6.

the common pleas court's. *McNeil Chevrolet, Inc. v. Unemp. Comp. Rev. Bd.,* 187 Ohio App.3d 584, 2010-Ohio-2376, 932 N.E.2d 986, ¶ 17 (6th Dist.). Every reasonable presumption must be made in favor of the UCRC's decision and its findings of fact. *Carter v. Univ. of Toledo,* 6th Dist. Lucas No. L-07-1260, 2008-Ohio-1958, ¶ 13.

### III. LAW AND ANALYSIS

{¶ 13} ODJFS argues that the trial court erred because it failed to limit its review to whether there existed competent, credible evidence in the record to support the UCRC decision. It claims that the trial court made improper credibility determinations and ignored Quota's testimony about Friedel's alleged demand that he violate Federal Motor Carrier Safety Administration ("FMCSA") regulations.

{¶ 14} FMCSA regulations require that truck drivers carrying property be off duty for 10 consecutive hours after being on duty for 14 consecutive hours. 49 C.F.R. 395.3(a)(2). They also prohibit a truck driver from driving after 70 hours on duty in eight consecutive days, but provide for that time to restart after 34 consecutive hours off duty. 49 C.F.R. 395.3 (b)(2). 49 C.F.R. 395.3 provides:

{¶ 15} Subject to the exceptions and exemptions in §395.1:

> (a) No motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle:

> (1) More than 11 cumulative hours following 10 consecutive hours off-duty;

7.

(2)  For any period after the end of the 14th hour after coming on duty following 10 consecutive hours off duty, except when a property-carrying driver complies with the provisions of §395.1(o) or §395.1(e)(2).

(b)  No motor carrier shall permit or require a driver of a property-carrying commercial motor vehicle to drive, nor shall any driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, for any period after—

(1)  Having been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or

(2)  Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

(c)(1) Any period of 7 consecutive days may end with the beginning of any off-duty period of 34 or more consecutive hours; or

(2) Any period of 8 consecutive days may end with the beginning of any off duty period of 34 or more consecutive hours.

{¶ 16} "On-duty" time includes "[a]ll time repairing, obtaining assistance, or remaining in attendance upon a disabled commercial motor vehicle."  49 C.F.R. 395.2. Quota produced logs indicating that due to the breakdown of his truck, he had been on duty from 9:00 a.m. on February 6, 2014, until 6:45 a.m. on February 7, 2014, in

8.

violation of FMCSA regulations. He explained that because he broke the 14-hour rule, he was prohibited from driving for 34 hours, and that even if a 34-hour reset period had not been triggered, he needed to take a 10-hour break, which would start at the time he arrived home at 6:45 a.m. He testified that Friedel came to his home at 10:30 a.m. knowing that Quota's hours exceeded the FMCSA limits, yet he demanded that Quota make a noon pick-up in Detroit, which Quota said was 130 miles away from his home. Quota claims to have quit his job for this reason.

{¶ 17} One is ineligible for unemployment benefits if he quits his employment without cause. R.C. 4141.29(H); *Elliott v. Bedsole Transp., Inc.,* 6th Dist. Lucas No. L-11-1004, 2011-Ohio-3232, ¶ 13. "The term 'quit' connotes a voluntary act by an employee not controlled by the employer." (Internal citations and quotations omitted.) *Id.* "Just cause is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Henize v. Giles*, 69 Ohio App.3d 104, 110, 590 N.E.2d 66 (4th Dist.1990), citing *Irvine,* 19 Ohio St.3d at 17, 482 N.E.2d 587 (1985). Whether just cause exists must be determined on a case-by-case basis. *Irvine* at 17. The claimant bears the burden of establishing just cause for quitting. *Id.*

{¶ 18} ODJFS surmises that the trial court determined either (1) that Quota's testimony was not credible, or (2) that he waived his position about having quit due to the hours-of-service issue because he did not raise it in his initial application for benefits or during the director's redetermination. ODJFS insists that the hearing officer had the benefit of Quota's live testimony and the trial court improperly substituted its judgment

9.

for the hearing officer's. It also maintains that principles of waiver do not apply in unemployment administrative proceedings and that evidence is to be accepted wherever in the record it may appear.

{¶ 19} We agree with ODJFS that it was the hearing officer who was in the best position to determine whether Quota's testimony was credible, and she had before her uncontradicted evidence that Quota would have violated the hours-of-service regulation if he had made the pick-up in Detroit on the morning of February 7, 2014. Additionally, we agree with ODJFS that the trial court is required to review "the certified record provided by the commission." R.C. 4141.282(H). The unemployment compensation statutes do not provide that arguments not made prior to an administrative hearing are waived and, in fact, the court must consider the record transmitted by the UCRC. There is nothing in the trial court decision to suggest that the trial court did so.

{¶ 20} In *Elliott,* 6th Dist. Lucas No. L-11-1004, 2011-Ohio-3232, we affirmed a UCRC decision allowing unemployment compensation benefits where the hearing officer made the factual determination that the employee, a truck driver, had been terminated without just cause for refusing to work a shift because he had not been off duty for ten consecutive hours. *Id.* at ¶ 15. As in *Elliott*, we find that there was competent, credible evidence to support the UCRC decision that Quota quit because Friedel demanded that he make a trip to Detroit that would have caused Quota to violate the FMCSA hours-of-service regulations. While the UCRC's decision focused on the provision of the regulations dealing with the 70-hour/eight day rule, we note that Quota's testimony also

10.

supports his position that even if that provision did not apply, he was required to be off-duty for ten consecutive hours based on the length of time of his February 6-7, 2014 trip. *See Rodefer v. Colbert,* 2015-Ohio-1982, 35 N.E.3d 852, ¶ 33 (2d Dist.) (affirming ODJFS decision despite applying somewhat different reasoning in reaching conclusion). Accordingly, we conclude that the UCRC's decision was not unlawful, unreasonable, or against the manifest weight of the evidence, and the trial court erred in reversing it.

**{¶ 21}** We find ODJFS's sole assignment of error well-taken.

### IV. CONCLUSION

**{¶ 22}** For the foregoing reasons, we reverse the January 29, 2015 judgment of the Williams County Court of Common Pleas and affirm the determination of the UCRC allowing unemployment compensation benefits to Quota. The costs of this appeal are assessed to Friedel under App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                          JUDGE
Stephen A. Yarbrough, P.J.

James D. Jensen, J.               _____
CONCUR.                                               JUDGE

                                 _____
                                                          JUDGE

11.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.