OPINION
Appellant Armco, Inc., appeals a judgment of the Court of Common Pleas of Richland County, Ohio, sustaining an award of the Unemployment Compensation Review Commission, which gave unemployment compensation benefits to seventeen claimants, the appellees herein. Appellant assigns a single error to the trial court:
 ASSIGNMENT OF ERROR THE COMMON PLEAS COURT ERRED IN SUSTAINING THE DECISIONS OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION, AS THOSE DECISIONS WERE UNLAWFUL, UNREASONABLE, AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant Armco operates a steel-producing plant in Mansfield, Richland County, Ohio. The seventeen appellees are all long-time hourly employees of the steel plant who performed mechanical maintenance on plant machinery in the Cold Mill Maintenance Department. All the appellees are members of the United Steel Workers of America, which is the exclusive bargaining representative for the workers. Armco, Inc. and the United Steel Workers of America had negotiated a collective bargaining agreement, which was in effect when the incident which led rise to these claims occurred. On December 20, 1997, the Cold Mill Maintenance employees scheduled to work overtime did not report to work, and none of the alternative employees Armco contacted were willing to work an overtime shift. In November, Armco had changed its policy on the number of overtime hours worked at the plant, a decision Armco was permitted to make under the collective bargaining agreement. Armco argues many of the members of the union were unhappy with this management decision. Armco's management believed the failure of the employees to report on December 20, and the refusal of the other employees contacted to come to work, was directly related to Armco's change in policy. Armco's Director of Human Resources informed the workers Armco would not take any action because of the December 20 incident, but would take disciplinary action if it happened again. Armco informed the union representatives of this on or about January 5, 1998. On January 8, 1998, Armco posted an over-time schedule for January 17, a Saturday. Several of the appellants whose names appeared on the list informed their supervisor they would not work that day. The company once again announced it would take action against any Cold Mill Maintenance employees who concertedly refused to work overtime. The Union responded that there was no concerted effort by the union employees to avoid working the scheduled over-time shift on January 17. Armco had scheduled five persons to work on January 17. One was excused because he was leaving for vacation. None of the employees scheduled to work on January 17 actually worked the shift, and all the other employees Armco contacted to take the shift had reasons why they were unable to come to work. The reasons varied from employee to employee, but it appears some of the employees worked on the previous shift and did not want to work a double shift; some were ill and provided medical verification from their doctors; and some simply declined because overtime was not mandatory pursuant to the collective bargaining agreement. Several employees came in but then had to leave, one because of a headache and another went to the hospital complaining of a backache. Armco, believing the employees were engaging in a concerted activity in violation of the collective bargaining agreement, issued a five day disciplinary suspension to every employee, regardless of the excuse given for not reporting to work. Armco originally announced its intention to fire all the employees, but negotiated a settlement with the Union. Pursuant to the settlement agreement, Armco would give the employees work suspensions, ranging from 30 to 45 days, if each of the employees was willing to sign a last-chance agreement. All the employees involved did sign the last-chance agreement. Seventeen of the suspended employees filed applications for unemployment compensation during the term of their disciplinary suspensions. Originally, the administrator held the claimants were unemployed because of a disciplinary layoff for misconduct, and disallowed their claims for unemployment compensation. However, on review, the Unemployment Compensation Review Commission found there was no evidence the employees' actions constituted an illegal work stoppage. Some of the employees presented legitimate reasons which precluded them from working the scheduled overtime, and Article 8, Section (B), of the Collective Bargaining Agreement provides overtime is not mandatory. The Commission concluded none of the employees in the department were required to work the overtime shift. The Commission noted it was suspicious that the employer was unable to find anyone in the department who was willing to work, but concluded the appellees were not guilty of any wrongdoing. The claims for the weeks at issue were allowed. Armco then appealed the matter to the court of common pleas, pursuant to R.C. 4141.28. The court of common pleas reviewed the factual and procedural history, and cited R.C. 4141.28 (O), which requires a court to affirm the Unemployment Commission's decision unless the court finds the decision is unlawful, or unreasonable, or against the manifest weight of the evidence. The trial court cited Irvine v. Unemployment Compensation Board of Review (1985), 19 Ohio St.3d 15, as authority for the proposition the commission must weigh the evidence and assess credibility, and where the Commission's decision is reasonable, the court should not upset its factual decision. The court found there was evidence in the record to support the Commission's decision, and the court of common pleas affirmed the Commission's decision. Armco urges appellees' refusal to work was part of a concerted action in violation of the contract, and in spite of Armco's warning, the employees persisted in the activity. Armco argues the Commission articulated the issue as whether the claimants engaged in an illegal work stoppage against the employer, when the true issue was whether the claimants engaged in behavior prohibited by the Collective Bargaining Agreement between the parties. Appellant never argued the appellees violated any law. Our review of the Commission's entire decision leads us to conclude the Commission properly focused on the Collective Bargaining Agreement, and on the issue of whether the employees' activities constituted participation in a concerted action, prohibited by the labor agreement, which resulted in the suspension or slow down of work in violation of the contract. In Tzangas, Plakas, Mannos v. Ohio Bureau of Employment Services (1995), 73 Ohio St.3d 694, the Ohio Supreme Court explained the differences in the scope of review common pleas courts and appellate courts apply to unemployment compensation cases. The Supreme Court, citing Irvine, supra, noted while appellate courts are not permitted to make factual findings or determine the credibility of witnesses, nevertheless, the courts do have the duty to determine whether the Board's decision is supported by the evidence in the record. This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the court of appeals and even to the Ohio Supreme Court, Tzangas at 696. The Supreme Court reminded the court of appeals the mere fact reasonable minds might reach different conclusions is not a basis for the reversal of the Board's decision, Tzangas at 697, citing Irvine at 18. Appellant asks us to reject the Commission's decision, and the decision of the court of common pleas, and to substitute our judgment for that of the fact finder regarding the factual issue of whether the employees acted a concerted action in violation of the agreement. Appellant points out to us the Commission, and the court of common pleas, expressed some suspicions regarding the validity of the excuses offered by the various employees. Nevertheless, both the Commission and the court of common pleas determined the evidence did not demonstrate the employees acted in concert and in violation of the contract. We agree with the court of common pleas there is evidence in the record to support the decision of the Commission, and we defer to the factual findings, as directed by State law and the Ohio Supreme Court. The assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
By Gwin, J., Wise, J., and Edwards, J., concur