STARK AREA REGIONAL TRANSIT AUTHORITY, Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellees.

[Cite as *Stark Area Regional Transit Auth. v. Ohio Dept. of Job & Family Servs.*, 187 Ohio App.3d 413, 2010-Ohio-2142.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2009–CA–00147.

Decided May 10, 2010.

Gust Callas and James M. Wherley Jr., for appellant.

Richard Cordray, Attorney General, and Susan M. Sheffield, Assistant Attorney General, for appellee.

GWIN, Presiding Judge.

{¶ 1} Stark Area Regional Transit Authority ("SARTA") appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which affirmed the decision of the Unemployment Compensation Review Commission of the Department of the Ohio Department of Job and Family Services. Appellant assigns a single error to the trial court:

{¶ 2} "I. The lower court erred in affirming the decision of the Unemployment Compensation Review Commission."

{¶ 3} The claimant, appellee Vincent J. Turner, was employed by appellant from June 7, 1999, to October 12, 2006. On October 12, 2006, appellant informed Turner that if he did not voluntarily resign, he would be discharged. Appellant gave as its reason its belief that Turner had falsified a report or claim for benefits. Turner resigned.

{¶ 4} In early 2006, appellant had given its employees, including Turner, questionnaires entitled "Spouse Coverage Questionnaire." The form was designed to determine whether employees' spouses were covered by health insur-

ance. Appellant would provide coverage for employees' spouses only if the spouse did not have benefits from another source.

{¶ 5} The form stated that if the employee's spouse was not employed, the employee had to complete only part "A," but if the spouse was employed, the employee should complete part "A," and the spouse's employer should complete part "B" of the form. If the spouse was not employed, the employee did not have to have part "B" filled out before returning the questionnaire to Human Resources.

{¶ 6} The questionnaire asked for the employee's name, date of birth, Social Security number, and marital status. If the employee was married, the form asked for the spouse's name, date of birth, and Social Security number. The form included a space to list the spouse's employer, if applicable. The form also asked whether the spouse's employer offered group medical coverage, and if so, whether the spouse was currently covered under the employer's group medical plan.

{¶ 7} Turner checked the block indicating that his spouse was employed and listed the spouse's employer as SCCAA Head Start. He answered "yes" to the question, "Does your spouse's employer offer group medical coverage?" and "no" to the question, "Is your spouse currently covered under his/her employer's group medical plan?"

{¶ 8} The last block to be completed states: "It is important that spouses be enrolled in the medical plan provided by their employers. If for some reason your spouse cannot enroll in his or her employer's plan, please explain below. [Example: Open enrollment will be held-name month]." The questionnaire Turner submitted states: "Employer has open enrollment. Open enrollment will be held 10/1/06."

{¶ 9} Above the line for the employee's signature, the form contains a notice: "Employee acknowledgment of responsibility. I understand that SARTA has implemented a spousal requirement for medical coverage. I acknowledge that the information on this form is accurate to the best of my knowledge. I understand that if any false statement is made or information is withheld, SARTA will have the right to recover any overpayment and recoup any legal fees incurred and medical coverage and employment may be immediately terminated. I also agree to report any changes in my spouse's status to the Human Resources Department within thirty (30) days of the change." Turner signed the questionnaire.

{¶ 10} When SARTA's Human Resources Director discovered Turner did not submit Part "B" of the questionnaire, which should have been completed by his wife's employer, the director placed a phone call to the employer and learned that

SCCAA Head Start did not have open enrollment. An employee could apply for benefits at any time, but could be subject to a waiting period or other restrictions or denied coverage.

{¶ 11} Turner presented a document from SCCAA outlining his wife's options for medical benefits. The document listed a number of choices, and beneath those choices, it stated: "I understand that I [illegible] for a period of at least one year or until the next open enrollment period, after which I may elect a change of medical plans during the [illegible] period."

{¶ 12} Turner maintained that he had relied on the form that indicated his wife's employer had open enrollment. He conceded that he did not know the actual date of open enrollment, but because she was a Head Start teacher whose school year did not begin until the end of September, he believed the open enrollment period would likely begin the first of the month following her return to work.

{¶ 13} Appellee issued an initial determination that Turner had quit without just cause and disallowed his application for benefits. Upon redetermination, appellee affirmed its initial determination. Turner then appealed the matter to the Unemployment Compensation Board of Review, and a hearing officer conducted an evidentiary hearing. The hearing officer determined that the decision to disallow Turner's application for benefits was incorrect and found that Turner had been discharged without just cause. On appeal, the review commission affirmed this decision. The hearing officer found that while appellant may have been dissatisfied with Turner's answers, the answers were simply mistakes and did not demonstrate sufficient fault or misconduct to disqualify him from unemployment compensation benefits.

{¶ 14} Upon review, the court of common pleas affirmed the decision.

{¶ 15} R.C. 4141.29(D)(2)(a) provides that no individual may be paid benefits when that individual "has been discharged for just cause in connection with the individual's work."

{¶ 16} R.C. 4141.282 governs appeals from decisions of the Unemployment Compensation Board of Review. The statute provides that if the court finds a decision to be unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or it may remand the matter to the commission. The statute also provides for an appeal to this court.

{¶ 17} All reviewing courts have the same obligation: "to determine whether the board's decision is supported by the evidence in the record," without substituting its own findings of fact or determinations regarding the credibility of witnesses for those of the board. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207. "The board's role

as factfinder is intact; a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." Id. at 697, 653 N.E.2d 1207.

{¶ 18} In *Tzangas*, the Supreme Court reviewed a situation in which the employer had discharged its employee because it had found the employee unsuitable and unable to perform the work. The employee had made numerous errors over a period of some nine months, which required duplicative efforts by her and her employers. Initially, the employee's application for unemployment compensation was allowed, because the employee was not at fault for willfully or wantonly refusing to do her job, but was merely incapable of performing the job despite her best efforts. The matter was affirmed through the administrative process and at the common pleas level, but this court reversed the decision and held that although the employee was not at fault, her inability to perform her job was sufficient justification for dismissal.

{¶ 19} The Ohio Supreme Court held that "fault on behalf of the employee is an essential component of a just cause termination." *Tzangas*, 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph two of the syllabus. Essentially, the Supreme Court held that while an employee may not be at fault in a moral sense, in some situations, the employee may still be at fault in a legal sense. The Supreme Court has explained that while there is no slide-rule definition of just cause, just cause is that which, to an ordinarily intelligent person, is a justified reason for doing or not doing a particular act. *Irvine v. Unemployment Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587, citing *Peyton v. Sun TV* (1975), 44 Ohio App.2d 10, 73 O.O.2d 8, 335 N.E.2d 751.

{¶ 20} Thus, a determination of just cause depends upon the unique factual considerations of a particular case and is primarily an issue for the trier of fact. *Irvine*, 19 Ohio St.3d at 17, 19 OBR 12, 482 N.E.2d 587. Although just cause is reviewed from the employer's point of view, "[i]n keeping with the intent and purpose of the Ohio Unemployment Compensation Act, 'fault' must be further determined from the employee's perspective." *Ohio Turnpike Comm. v. Conrad* (Dec. 1, 1994), 8th Dist. No. 66405, 1994 WL 677491, *5; *Morris v. Ohio Bur. of Emp. Serv.* (1993), 90 Ohio App.3d 295, 299, 629 N.E.2d 35.

{¶ 21} While *Tzangas* held that fault is a necessary element of any just-cause discharge, not every fault or mistake is grounds for termination. The hearing officer here found that Turner made a mistake, but it was not sufficient to justify firing him. We do not agree. In *Wilson v. Matlack, Inc.* (2000), 141 Ohio App.3d 95, 99, 750 N.E.2d 170, the Court of Appeals for the Fourth District reviewed an unemployment-compensation appeal wherein the employee had admitted that he had "made a mistake" in his personal life, namely, indulging in

marijuana on one occasion, and as a result, failed a random drug test. His employer terminated his employment, and through the administrative process, his claim for unemployment-compensation benefits was denied. However, at the common pleas level, the court reversed, holding that the collective-bargaining agreement did not permit firing for this infraction.

{¶ 22} The court of appeals reversed the judgment of the common pleas court, holding that it had erred in relying solely on the collective-bargaining agreement. More importantly, the court of appeals noted that the positive random drug test disqualified the employee from performing essential tasks related to his employment as a truck mechanic, and therefore, the employer was justified in discharging the employee.

{¶ 23} Here, Turner argues that he simply made a mistake on the form. The mistake was not insignificant, such as making a mistake on the date. The form in question notified Turner that the entire purpose of the questionnaire was to determine whether his spouse received or could receive health-insurance benefits from her employer. The form required him to certify the information on the form and warned him that he could be sanctioned, even including termination of his employment, for a false statement. The mistake Turner made went to the very heart of the purpose for the questionnaire. In addition, while he arguably had a misleading document from his wife's employer indicating that there was open enrollment, he admitted that the date he listed was based upon his own speculation. If Turner or his wife had checked with SCCAA Head Start, or if Head Start had completed its portion of the form, the mistake would have been detected.

{¶ 24} We must defer to the hearing officer's finding of fact that Turner made a mistake rather than a deliberate misrepresentation, but nevertheless, we disagree with the conclusion that it was not a sufficient error to justify his termination. While we might have preferred to see a lesser sanction, we cannot say that appellant was not within its rights to terminate Turner's employment.

{¶ 25} The assignment of error is sustained.

{¶ 26} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed.

Judgment reversed.

FARMER, J., concurs.

DELANEY, J., dissents.

DELANEY, Judge, dissenting.

{¶ 27} I respectfully dissent from the majority opinion.

{¶ 28} The sole basis for Turner's discharge was that he knowingly falsified an insurance form. I therefore agree with appellee that the facts of this case necessitated a finding of intentional misconduct on the part of Turner to justify termination, as the insurance form stated that employment may be terminated if any false statement was made.

{¶ 29} Although appellant correctly contends that "just cause" does not typically require intentional action, the determination of just cause depends upon the "unique factual considerations of the particular case" and is therefore an issue for the trier of fact. *Irvine v. Unemployment Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 17, 482 N.E.2d 587.

{¶ 30} The hearing examiner found that "[w]hile the employer may have been dissatisfied with the answers provided by claimant, claimant has provided credible testimony to establish that the answers to which the employer objected were simply mistakes. It has not been shown that claimant engaged in sufficient fault or misconduct to suspend his unemployment benefits."

{¶ 31} I would conclude that the foregoing findings of fact, as determined by the hearing examiner, and as approved by the Unemployment Compensation Review Commission and the trial court, are not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶ 32} The majority concludes: "We must defer to the hearing officer's finding of fact that Turner made a mistake rather than a deliberate misrepresentation but nevertheless, we disagree with the conclusion it was not a sufficient error to justify his termination." By so stating, the majority substitutes its judgment for that of the reviewing tribunals and goes beyond the narrow scope of review possessed by this court.

{¶ 33} Therefore, I would overrule appellant's sole assignment of error and affirm the trial court.