**STAPLETON, Appellant,**

v.

**OHIO DEPARTMENT OF JOB & FAMILY SERVICES et al., Appellees.**

[Cite as *Stapleton v. Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 195.

Decided Aug. 24, 2005.

Community Legal Aid Services and Jan R. Mostov, for appellant.

Jim Petro, Attorney General, and Betsy Nims–Friedman, Assistant Attorney General, for appellees.

WAITE, Judge.

{¶ 1} Appellant, Scarlette Stapleton, applied for unemployment compensation after quitting her job with Innersource, Inc., a small business in Youngstown, Ohio. She was initially allowed benefits, but the Unemployment Compensation Review Commission later reversed that decision based on its conclusion that appellant had quit her job without just cause. Appellant filed an appeal with the Mahoning County Court of Common Pleas, which affirmed the decision of the commission, and it is this judgment that forms the basis of the instant appeal.

{¶ 2} Appellant argues on appeal that she quit her job with just cause because of a drastic reduction in her work hours from 30 to 40 hours per week to ten hours. There is some case law supporting the notion that a drastic reduction in work hours can provide just cause for quitting. Nevertheless, there are other facts in evidence that show that a reasonable person would not have quit under the circumstances of this case, and for this reason the judgment of the Mahoning County Court of Common Pleas is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶ 3} The following facts appear in the October 3, 2002 report prepared by a hearing officer of the commission, and from the transcript of the hearing. Appellant began her employment with Innersource on March 19, 2001, as an at-will employee. Innersource is a sign company. Appellant's duties were as a vinyl cutter and a secretary. She generally worked 30 to 40 hours per week. Due to medical problems, appellant did not return to work after March 13, 2002. She planned to return to work at some point, but did not make it clear to the owner, Gloria Byce, when that would happen. Her employer subsequently entered into a contract with a high school student to perform appellant's duties. This contract guaranteed the student 20 hours of work each week. The contract was due to expire sometime near the end of May or beginning of June 2002. The student began work between 11:15 a.m. and noon each weekday and left work at 5:00 p.m. The job required access to a company computer, which had been appellant's computer.

{¶ 4} At some point prior to May 9, 2002, appellant found out that if she returned to work her hours would be reduced. On May 9, 2002, appellant met with Byce to discuss her work situation. She told Byce that she planned to return to work on May 13, 2002. Her employer stated that she did not have enough work for appellant to return to her former schedule due to the hours that had been committed to the high school student. She also said that there was only one computer that appellant could use, and it was already being used by the high school student. Appellant was told that she could use the computer only from 9:00 to 11:00 a.m. on weekdays, for a total of ten hours per week. Appellant would be paid the same $10 hourly rate as before. At this point appellant told her employer that she was resigning because she was not willing to work the reduced schedule.

{¶ 5} Appellant testified at the hearing that the only reason she resigned was because of the reduced work hours. She testified that she did not ask Byce if there were any alternatives to the 9 to 11 a.m. schedule, such as coming in earlier in the day. She was not clear about why she thought she would be better off resigning rather than earning at least some income for ten hours per week. She

did mention that it might be complicated to get her daughter to and from school while having to drive across town to work for just a couple of hours per day.

{¶ 6} Appellant admitted that Byce "would try to get me more hours later down the road, but there was no guarantee how things were going to go."

{¶ 7} Byce testified that she, as well as others in her office, tried to contact appellant a number of times during her absence, but that the calls were unsuccessful and that appellant failed to return messages. Byce stated that Appellant never gave a definite date when she hoped to return to work. Byce testified that, at the May 9 meeting, she told appellant that "we'll do our best to increase these hours and incorporate you back into the work schedule, but we can't do anything until this contract is over." She told appellant that her intention was to give her more hours and that her prior experience had been that there were always more hours available.

{¶ 8} On May 15, 2002, appellant filed an application for the determination of unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS"). The application was allowed with a benefit year beginning on May 12, 2002.

{¶ 9} On June 10, 2002, Innersource filed an appeal of the initial determination. On July 8, 2002, the initial determination was affirmed.

{¶ 10} On July 11, 2002, Innersource filed an appeal of the redetermination. On July 17, 2002, the case was transferred to the jurisdiction of the commission. On September 26, 2002, hearing officer R. Keller Rohde held a hearing on the appeal. Appellant appeared with counsel, and Innersource was represented by owner Gloria Byce, without counsel. The hearing officer issued a decision on October 3, 2002, which reversed the redetermination decision and denied appellant's claim. The hearing officer found that appellant quit her job without just cause.

{¶ 11} Appellant filed a request for review on October 22, 2002, which was disallowed on November 21, 2002.

{¶ 12} On December 9, 2002, appellant filed an administrative appeal in the Mahoning County Court of Common Pleas. The case was referred to a magistrate. On July 9, 2004, the magistrate issued his decision, which reversed the prior decision of the commission as unlawful, unreasonable, and against the manifest weight of the evidence.

{¶ 13} On July 19, 2004, the Director of ODJFS filed objections to the magistrate's decision.

{¶ 14} On August 12, 2004, the Mahoning County Court of Common Pleas overruled the magistrate's decision and reinstated the decision of the commission, thus denying appellant's claim. This timely appeal was filed on August 30, 2004.

## STANDARD OF REVIEW

{¶ 15} R.C. 4141.282(H) governs the standard of review to be applied by the court of common pleas and subsequent reviewing courts in unemployment compensation cases:

{¶ 16} "If the court finds that the decision of the commission was *unlawful, unreasonable, or against the manifest weight of the evidence,* it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." (Emphasis added.)

{¶ 17} The commission and its referees are the triers of fact. See *Feldman v. Loeb* (1987), 37 Ohio App.3d 188, 190, 525 N.E.2d 496. Therefore, the common pleas court acts as an appellate court and is limited to determining whether the commission's decision was supported by some competent and credible evidence. Id. The common pleas court may not substitute its judgment for that of the hearing officer or the board. *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 45, 23 O.O.3d 57, 430 N.E.2d 468.

{¶ 18} "[W]hile appellate courts [including the common pleas court] are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, citing *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 19} The fact that reasonable minds might interpret the facts differently and reach different conclusions is not a basis for the reversal of the board's decision. Id. at 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 20} Although reviewing courts are not permitted to make factual findings or to determine the credibility of witnesses, we do have the duty to determine whether the commission's decision is supported by some evidence in the record. Id. As this court has stated, in unemployment cases an appellate court will not review a common pleas court's decision under an "abuse of discretion" standard, but rather, will review the decision of the board of review using the same standard used by the common pleas court. *Laukert v. Ohio Valley Hosp. Assn.* (1996), 115 Ohio App.3d 168, 171–172, 684 N.E.2d 1281. In addition, the commission's final decision may not be reversed as against the

manifest weight of the evidence if it is supported by some evidence in the record. *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583, 589, 674 N.E.2d 1232. Where the commission might reasonably decide either way, reviewing courts have no authority to upset the commission's decision. *Irvine,* 19 Ohio St.3d at 18, 19 OBR 12, 482 N.E.2d 587.

### Assignment of Error

{¶ 21} "The common pleas court committed reversible error by overruling the magistrate's decision and reinstating the decision of the review commission."

{¶ 22} Appellant's argument on appeal is that she had just cause for quitting her job because of the reduction in her work hours from 30 to 40 hours per week to ten hours per week. Pursuant to R.C. 4141.29(D)(2)(a), a claimant is ineligible for unemployment benefits if she quits a job without just cause. Appellee attempts to demonstrate on appeal that the reduction in hours was not really as drastic as 66 to 75 percent, but the record clearly supports the commission's finding concerning the reduction in hours. The question that remains is whether or not a 66 to 75 percent reduction in hours constitutes just cause for quitting in light of the facts of this case.

{¶ 23} R.C. Chapter 4141 does not define "just cause." Case law has defined "just cause" as that which " 'to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Irvine,* supra, 19 Ohio St.3d at 17, 19 OBR 12, 482 N.E.2d 587, quoting *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 335 N.E.2d 751.

{¶ 24} "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the [commission]." Id.

{¶ 25} It must be mentioned that the claimant has the burden of proving her entitlement to unemployment compensation benefits, including the existence of just cause for quitting work. Id.

{¶ 26} The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the act's purpose is "to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis sic.) *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223, 27 O.O.2d 122, 199 N.E.2d 3. Likewise, "[t]he act was intended to provide financial

assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 399 N.E.2d 76.

{¶ 27} Appellant assumes that it is a matter of law, rather than a question of fact, that an employee whose hours are dramatically reduced by 66 to 75 percent is entitled to collect unemployment benefits. Appellant cites two cases to support her theory. The first is an older opinion from this court, *Richards v. Ohio Bur. of Emp. Serv.* (Aug. 18, 1980), 7th Dist. No. 79 C.A. 78, 1980 WL 351622. In *Richards,* the employee's hours were reduced from 20 per week to 12.5, through no fault of the employee. *Richards* acknowledged that "just cause" is determined on a case-by-case basis, viewed from the perspective of the ordinarily intelligent person. *Richards* concluded that there was just cause for quitting based on the drastic reduction in work hours and reversed the decision of what was then called the Unemployment Compensation Board of Review.

{¶ 28} Appellant also cites *Bainbridge Twp. v. Stellato* (Mar. 8, 1996), 11th Dist. No. 95–G–1936, 1996 WL 200594, for the same principle. In *Bainbridge,* the employee had worked as a clerk for the township fire department for approximately seven years, averaging about 30 hours per week. She took a medical leave of absence from February to May 1992. While on leave she received a letter stating that she would be working only ten hours per week when she returned, but that her duties would remain the same. There was also evidence that she would no longer be eligible for medical insurance because of the reduced hours. The employee informed the township that she was quitting because of the reduced hours and loss of medical benefits. She then applied for unemployment benefits, which were initially granted. The case was appealed to the Geauga County Court of Common Pleas, which reversed the decision and denied benefits. The Eleventh District Court of Appeals reinstated the award of benefits, finding that the reduction in hours was so drastic that it "almost equates to a constructive discharge." Id. at *3.

{¶ 29} Appellee cites one case that supports the proposition that a drastic reduction in work hours does not necessarily constitute just cause for quitting a job. In *Perrin v. Ohio Bur. of Emp. Servs.* (Apr. 8, 1983), 6th Dist. No. 6–83–019, 1983 WL 6767, the employee worked as therapist for J. Michael Swope, D.M.D.C., a chiropractor. She was also being treated as a patient by Dr. Swope. The employee decided to discontinue treatment with Dr. Swope, and she began seeing an osteopathic doctor. Dr. Swope's office environment became strained after the employee decided to find another doctor, and her hours were soon reduced. She eventually quit and applied for unemployment benefits, which were denied. The Sixth District Court of Appeals made the following observations:

{¶ 30} "In the case at bar, the referee found that appellant could have continued working for Swope although at reduced hours of employment. While the referee found that strained relations resulted at the place of employment, the referee found that the facts did not make it reasonably necessary for appellant to quit her job and, accordingly, that she quit her work without just cause." Id. at *1.

{¶ 31} The cases cited by appellant did not hold that a certain level of reduced wages would constitute, as a matter of law, just cause for quitting employment. Both *Richards* and *Bainbridge* cite the same standards of review used in every other unemployment case involving a "just cause" question: that "just cause" must be determined based on the specific facts of the case, viewed in the light of what an ordinarily intelligent person would think was reasonable. A reasonable reduction in work hours is certainly a key fact to be considered, but it may not be the only relevant fact in an unemployment compensation case.

{¶ 32} One factor that appellant does not mention that is crucial to a "just cause" determination is whether the employee is at fault in creating the situation leading to the termination of employment. See, e.g., *Irvine*, supra, 19 Ohio St.3d at 17, 19 OBR 12, 482 N.E.2d 587; *King v. State Farm Mut. Auto Ins. Co.* (1996), 112 Ohio App.3d 664, 669, 679 N.E.2d 1158; *Booth v. Ohio Bur. of Emp. Servs.* (June 30, 1999), 7th Dist. No. 98 C.A. 109, 1999 WL 476092. This element of a "just cause" analysis could easily explain the difference in the outcomes of *Richards* and *Bainbridge,* on the one hand, and *Perrin,* on the other. Furthermore, an employee is required to cooperate with the employer to resolve work-related problems. *Irvine,* supra, 19 Ohio St.3d at 18, 482 N.E.2d 587. If the employee does not cooperate or give the employer sufficient time to accommodate the employee's needs and concerns, that employee will usually not be found to have just cause if he or she quits.

{¶ 33} The record indicates that appellant was significantly, if not primarily, responsible for the situation that led to her reduced hours. She failed to keep her employer informed about her health and work status. Her failure to keep her employer informed appears to have significantly contributed to the employer's decision to hire another employee with a guaranteed number of hours per week. She failed to work with her employer to see if other accommodations could be made rather than just reducing her to ten hours per week. She also failed to accept her employer's explanation that the reduction in hours was temporary, covering only the two- or three-week period remaining on the high school student's contract. These are all facts in the record that support the decision of the commission.

{¶ 34} If the only factual issue under review was the reduction in hours, Appellant might have had a persuasive argument because her hours were clearly reduced by 66 percent to 75 percent. Nevertheless, there are many other facts to consider in this case that reduce the relative importance of the temporary reduction in hours. The facts in this case may be read to support the commission's decision, although a different fact finder might have come to a different conclusion. As stated earlier, in situations where reasonable minds could reach different conclusions about the facts, a reviewing court may not reverse the findings and determinations of the trier of fact. *Irvine*, 19 Ohio St.3d at 18, 482 N.E.2d 587. Therefore, we overrule appellant's sole assignment of error and affirm the judgment of the Mahoning County Court of Common Pleas, which itself affirmed the decision of the commission.

Judgment affirmed.

DONOFRIO, P.J., and VUKOVICH, J., concur.