[Cite as *Sutfin v. Carsbad Marketing & Communications, Inc.,*, 2011-Ohio-5988.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| AMY B. SUTFIN | : | |
| | : | Appellate Case No. 24555 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 10-CV-08694 |
| v. | : | |
| | : | |
| CARLSBAD MARKETING & | : | (Civil Appeal from |
| COMMUNICATIONS, INC. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

## O P I N I O N

Rendered on the 18th day of November 2011.

. . . . . . . . .

ADAM R. WEBBER, Atty. Reg. #0080900, Falke & Dunphy, LLC, 30 Wyoming Street, Dayton, Ohio 45409
        Attorney for Plaintiff-Appellant, Amy Sutfin

MICHAEL DEWINE, Atty. Reg. # 0009181, YVONNE TERTEL, Atty. Reg. #0019033, Attorney General's Office, 30 Est Broad Street, 26th Floor, Columbus, Ohio 43215
        Attorneys for Defendant-Appellee, Ohio Department of Job & Family Services

CARLSBAD MARKETING & COMMUNICATIONS, INC., 707 Miamisburg-Centerville Road, Suite 182, Dayton, Ohio 45459
        Appellee, *pro se*

. . . . . . . . .

HALL, J.

{¶ 1} Amy B. Sutfin appeals from the trial court's judgment entry affirming an administrative decision upholding the denial of her application for unemployment benefits.

**{¶ 2}** Sutfin advances two assignments of error on appeal. First, she contends the trial court erred in holding that she had quit her job without just cause. Second, she claims the trial court erred in holding that the Unemployment Compensation Review Commission was free to disregard relevant evidence.

**{¶ 3}** The record reflects that Sutfin began working for Carlsbad Marketing & Communications, Inc., in 2006. She was the only employee and worked full-time under the company's owner, Sally Doran. In the fall of 2008, a business slowdown caused Doran to reduce Sutfin's schedule from forty hours a week to twenty-eight hours a week. Sutfin complained about the reduction and discussed it with Doran. In the administrative proceedings below, Sutfin testified that, in addition to reducing her hours, Doran began verbally abusing her with "daily personal attacks." Thereafter, in November 2009, Doran further reduced Sutfin's schedule from twenty-eight hours a week to just eight hours a week, again citing a slowdown in business. Sutfin quit her job on November 17, 2009.

**{¶ 4}** Sutfin applied for unemployment benefits on January 7, 2010. In connection with her application, Sutfin gave two reasons for quitting her job: the "daily personal attacks" she endured from Doran and the reduction in her work hours. Sutfin's application was denied throughout the administrative appeals process based on a finding that she had quit her job without just cause. Sutfin filed a notice of appeal from the Review Commission's final denial of benefits. The trial court affirmed the Review Commission's ruling in a March 4, 2011 decision, order, and entry.

**{¶ 5}** With regard to Sutfin's claims of verbal abuse, the trial court noted that her allegations "consisted of vague statements about what she claim[ed] to have endured at her

place of employment." The trial court further determined that Sutfin should have discussed the alleged verbal abuse with Doran before quitting. As for the reduction in work hours, the trial court reasoned that "the determination of whether the reduction in hours was substantial enough to provide Sutfin with just cause to quit her job was a factual one to be determined by the hearing officer[.]" The trial court also noted that some work remained available for Sutfin and found that Sutfin had "failed to establish that she had discussed the matter [i.e., the reduced hours] with Doran prior to quitting." The trial court then found that the record supported the hearing officer's determination that Sutfin had quit her job without just cause and that she was not excused from discussing her problems with Doran before resigning. As a result, the trial court upheld the administrative denial of unemployment benefits. This appeal followed.

{¶ 6}  Sutfin's first assignment of error challenges the trial court's affirmance of the administrative finding that she quit her job without just cause, rendering her ineligible for unemployment benefits.

{¶ 7}  Our appellate review of a denial of unemployment benefits is limited. *Johnson v. SK Tech., Inc.*, Montgomery App. No. 23522, 2010-Ohio-3449, ¶18, citing *Silkert v. Ohio Dept. of Job & Family Services*, 184 Ohio App.3d 78, 2009-Ohio-4399, ¶26. "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 1995-Ohio-206, paragraph one of the syllabus. "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and

cannot make factual findings or determine witness credibility. * * * However, these courts 'do have the duty to determine whether the board's decision is supported by evidence in the record.'" *Silkert*, at ¶26, quoting *Tzangas*.

**{¶ 8}** Ohio Revised Code Section 4141.29 establishes the eligibility requirements for unemployment benefits. A claimant is ineligible if she quits her job without "just cause." R.C. 4141.29(D)(2)(a). The issue before us is whether Sutfin had just cause to quit her job with Carlsbad Marketing & Communications. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17. In conducting our review, we bear in mind that the unemployment compensation statutes should be construed liberally in favor of the applicant. *Clark Cty. Bd. of Mental Retardation & Developmental Disabilities v. Griffin*, Clark App. No.2006-CA-32, 2007-Ohio-1674, ¶10.

**{¶ 9}** Upon review, we agree with the trial court that Sutfin's work environment did not provide just cause for her to quit her job. The administrative hearing officer found, as a factual matter, that Sutfin quit her job because Doran had reduced her hours. This factual finding is supported by Sutfin's own hearing testimony. The administrative hearing transcript reflects the following exchange between Sutfin and the hearing officer:

**{¶ 10}** "Q: And did you quit, were you discharged or were you laid off due to a lack of work?

**{¶ 11}** "A: I quit due to a lack of work.

**{¶ 12}** "Q: What do you mean you quit due to a lack of work?

**{¶ 13}** "A: Well [Doran] had reduced my hours because she was predicting smaller

mailings and budgets were being cut, so she was going to do more of my position so there wasn't going to be as many hours for me to have. So I quit due to the fact that she was taking over some of my job responsibilities and there was going to be a lack of work for me to do."[1]

{¶ 14} Although Sutfin also testified that Doran had engaged in "verbal abuse and belittling each and every day," the hearing officer reasonably found that the reduction in work hours, rather than the verbal abuse, was the cause of Sutfin's resignation. By Sutfin's own admission, she tolerated the alleged abuse from the fall of 2008, when Doran initially cut her hours, until November 2009, when Doran further reduced her work schedule to eight hours per week. Sutfin resigned after that reduction, which supports an inference that the second reduction, rather than the alleged verbal abuse, caused her to quit.[2]

{¶ 15} The closer question is whether the second reduction in Sutfin's work hours constituted just cause for her to quit. "The determination of just cause depends upon the 'unique factual considerations' of a particular case and is therefore primarily an issue for the trier of fact (i.e., the bureau and the commission)." *Barney v. GNC Corp.*, Greene App. No. 2001-CA-129, 2002-Ohio-4687, ¶13, quoting *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." Id. Our task is to determine whether the administrative finding of no just cause in this case was unlawful, unreasonable, or against the weight of the evidence. *Clark Cty. Bd. of Mental Retardation & Developmental Disabilities v.*

---

[1] See Administrative Hearing Transcript at 4.

[2] In light of this determination, we need not address Sutfin's argument about whether she was required to discuss the alleged verbal abuse with Doran before quitting.

*Griffin*, Clark App. No.2006-CA-32, 2007-Ohio-1674, ¶9. Relatively little case law exists addressing whether a reduction in work hours constitutes just cause for an employee to quit her job. The courts that have addressed the issue over the years have reached different conclusions.[3]

{¶ 16} Upon review, we believe the record supports a finding that Sutfin lacked just cause to quit her job. On appeal, Sutfin disputes the hearing officer's statement that just cause was lacking because she quit without giving notice or attempting to discuss her concerns with Doran. The hearing testimony on this issue suggests that Sutfin discussed the initial reduction in hours with Doran but not the second one that led to her resignation. But regardless of whether Sutfin sufficiently complained to Doran, or even needed to do so, the hearing officer notably found that she quit because her hours had been reduced and that she could have continued working eight hours a week. Likewise, the trial court observed that "work was still available for Sutfin at Carlsbad." Although Sutfin's hours had been reduced substantially, we cannot ignore the fact that she could have continued working eight hours per week and applied for partial unemployment compensation to help cover her loss of income. "R.C. 4141.29 provides that eligible individuals shall receive benefits as compensation for loss of

---

[3] See, e.g., *Bethlenfalvy v. Ohio Dept. of Job & Family Services*, Cuyahoga App. No. 84772, 2005-Ohio-2612 (finding just cause); *Stapleton v. Ohio Dept. of Job & Family Services*, 163 Ohio App.3d 14, 2005-Ohio-4473 (no just cause); *Schaffer Goggin v. State Unemploymnent Comp. Review Com'n*, Richland App. No. 03-CA-2, 2003-Ohio-6907 (no just cause); *Bainbridge Twp. v. Stellato* (March 8, 1996), Geauga App. No. 95-G-1936 (no just cause); *Massie v. Univ. of Kentucky* (Sept. 11, 1991), Lawrence App. No. 1970 (finding just cause); *Ward v. St. John Hosp.* (Dec. 4, 1986), Cuyahoga App. No. 51321 (no just cause); *Perrin v. Bureau of Employment Services* (April 8, 1983), Lucas App. No. 6-83-019 (no just cause); *Doney v. Bureau of Employment Services* (Dec. 10, 1981), Tuscarawas App. No. CA-1540 (finding just cause based on hourly wage reduction); *Richards v. Ohio Bureau of Employment Services* (Aug. 18, 1980), Mahoning App. No. 79 CA 78 (finding just cause); *Kurtz v. Martins Foods. Inc* (Sept. 20, 1979), Franklin App. No. 79AP-297 (no just cause); *Redmond v. Board of Review* (Jan. 8, 1976), Clark App. No. 999 (no just cause).

remuneration due to involuntary total or *partial unemployment* as set forth by statute." *Clark Cty. Bd. of Mental Retardation & Developmental Disabilities v. Griffin*, Clark App. No. 2006-CA-32, 2007-Ohio-1674, ¶10 (emphasis added). "An individual is 'partially unemployed' in any week if, due to involuntary loss of work, the total remuneration payable to the individual for such week is less than the individual's weekly benefit amount." R.C. 4141.01(N).

{¶ 17} The record reflects that Sutfin made $23.50 per hour when she quit her job. Working eight hours per week would have produced a gross weekly income of $188.00. Although neither party has provided us with the necessary calculations, we presume that total remuneration of $188 per week would have been less than Sutfin's weekly unemployment benefit. Therefore, under R.C. 4141.29 and R.C. 4141.01(N) she reasonably could have continued working one day a week and collected a partial unemployment benefit.[4] *Schaffer Goggin v. State Unemployment Comp. Review Com'n*, Richland App. No. 03-CA-2, 2003-Ohio-6907, ¶21 (relying on the hearing officer's observation that the claimant "could have worked the hours made available to her, and if she earned less than her weekly benefit amount, filed a claim for partial unemployment compensation benefits"); *Ward v. St. John Hosp.* (Dec. 4, 1986), Cuyahoga App. No. 51321 ("It should be noted, however, that the

---

[4]On the other hand, if Sutfin's part-time remuneration of $188 per week exceeded the unemployment benefit available to her, it still would have been unreasonable for her to quit her job. See *Redmond v. Board of Review* (Jan. 8, 1976), Clark App. No. 999 ("While just cause is not well defined, where the statute recognizes partial unemployment and subsidizes the difference between earnings and benefits, a reduction in hours such as experienced in this case falls within a standard and guide established by law. The existence of such standards suggests that it is not appropriate for the court to establish different standards under the guise of what is or is not just cause. This is precisely what the appellant seeks in asking for reversal because of the reduction in hours which produces a thirty per cent loss in wages, a result still in excess of the benefits available.").

Administrator has determined claimant's weekly benefit amount to be $126.00. If claimant did not make this amount of money, she would be entitled to partial unemployment compensation benefits under the provisions of the Ohio Law. Under these circumstances, it must be found that the work offered to the claimant was suitable work and that claimant did not have any just cause for refusing said work."); see, also, *Perrin v. Bureau of Employment Services* (April 8, 1983), Lucas App. No. 6-83-019 ("In the case at bar, the referee found that appellant could have continued working for Swope although at reduced hours of employment. While the referee found that strained relations resulted at the place of employment, the referee found that the facts did not make it reasonably necessary for appellant to quit her job and, accordingly, that she quit her work without just cause. We cannot say that the judgment of the Common Pleas Court or the decision of the Board of Review was unlawful, unreasonable, or against the manifest weight of the evidence.").

{¶ 18} Allowing Sutfin to quit her job and receive total unemployment compensation would undermine the statutory scheme providing for a person in her situation to continue working and receive partial benefits. Most of the cases holding that a reduction in hours constitutes just cause for an employee to quit her job overlook this fact. Under the circumstances before us, we cannot say that the finding of no just cause for Sutfin to quit her job was unlawful, unreasonable, or against the weight of the evidence. Accordingly, we overrule Sutfin's first assignment of error.

{¶ 19} In her second assignment of error, Sutfin contends the trial court erred in holding that the Unemployment Compensation Review Commission was free to disregard relevant evidence. This argument concerns the hearing officer's refusal to admit into evidence

a hard copy of e-mails Sutfin received from Doran after her resignation. One of the e-mails, which is part of the record, included the following statement from Doran regarding Sutfin's resignation: "I was hoping you would have left much, much earlier in 2009 but thankfully you have done so and simply need this letter to be done with it." Other e-mails contained what have been characterized as "snide" remarks. The hearing officer excluded the e-mails from evidence, finding them not relevant.

{¶ 20} On appeal, Sutfin contends the e-mails were relevant because they "weigh[ed] directly on  [her] allegations that any complaint to Doran would have been futile and that Doran was verbally abusing her." Having reviewed the e-mails, we agree that they may have shed some light on the nature of the relationship between Doran and Sutfin. On the other hand, given that Doran sent the e-mails after Sutfin's abrupt resignation, the tone of the e-mails appears to have been affected by resentment stemming from the fact that Sutfin had quit without giving notice and, therefore, may not have reflected the nature of the relationship between the women during Sutfin's employment.

{¶ 21} In any event, even assuming that the e-mails retained some relevance, their exclusion constituted at most harmless error. See, e.g., *Euclid Manor Nursing Home v. Bureau of Employment Services* (1985), 28 Ohio App.3d 17, 19 (finding that an administrative hearing officer's exclusion of relevant evidence constituted harmless error); *Giles v. F & P Am. Mfg., Inc*., Miami App. No. 2004-CA-36, 2005-Ohio-4833, ¶36 (applying harmless-error analysis to an unemployment compensation hearing officer's evidentiary ruling). The fact that Doran may have wanted Sutfin to quit earlier does not negate the undisputed fact that the reduction in Sutfin's hours was attributable to a slowdown in business. Nor does the existence

of post-resignation "snide" remarks negate the fact that Sutfin could have continued to work, as she admittedly had done while enduring alleged verbal abuse for the previous year, and obtained partial unemployment compensation. Even taking the e-mails into consideration, we find no error in the hearing officer's determination that Sutfin quit her job without just cause. Accordingly, her second assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . . .

DONOVAN, J., concurs.
FROELICH, J., concurs in judgment only.

Copies mailed to:

Adam R. Webber
Michael DeWine
Yvonne Tertel
Carlsbad Marketing & Communications, Inc.
Hon. Mary K. Huffman