[Cite as *Loughman v. Ohio Dept. of Pub. Safety*, 2016-Ohio-1086.]

## IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Tatiana Loughman, | : | |
| Appellant-Appellant, | : | No. 15AP-473 |
| | | (C.P.C. No. 14CVF-11749) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Department of Public Safety, Ohio Highway Patrol et al., | : | |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

# D E C I S I O N

### Rendered on March 17, 2016

**On brief:** *Marshall & Morrow LLC*, *Samuel M. Schlein*, *John S. Marshall*, and *Edward R. Forman*, for appellant. **Argued:** *Samuel M. Schlein.*

**On brief:** *Michael DeWine*, Attorney General, and *Richard M. Jones*, for appellee Ohio Department of Public Safety, Ohio Highway Patrol.

**On brief:** *Michael DeWine*, Attorney General, and *Alan Schwepe*, for appellee Director, Ohio Department of Job & Family Services. **Argued:** *Alan Schwepe.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Tatiana Loughman, appellant, has filed an appeal from the judgment of the Franklin County Court of Common Pleas in which the court affirmed the decision of the Unemployment Compensation Review Commission ("commission"), a division of the Ohio Department of Job and Family Services ("ODJFS"), appellee.

{¶ 2}   Appellant began working as a police officer for the Ohio Department of Public Safety ("ODPS"), Ohio Highway Patrol ("highway patrol"), appellee, on August 7, 2013. Upon commencement of her employment, she was subjected to sexual harassment by co-workers and her supervisor, Sergeant Sheldon Robinson. In November 2013, she filed a complaint ("first complaint") with the human resources department regarding the harassment. The first complaint was found to be justified, and Sergeant Robinson was disciplined.

{¶ 3}   Appellant returned to the same position and continued to work under Sergeant Robinson. Appellant claimed that the sexual harassment and hostile work environment continued. Appellant requested, and was granted, sick leave from May 20, through May 26, 2014. On May 21, 2014, appellant complained again ("second complaint") to the Equal Employment Opportunity ("EEO") manager that Sergeant Robinson continued to harass her, prompting the commencement of a second investigation. On May 27, 2014, appellant returned to work and was transferred to the Office of Personnel pending the investigation.

{¶ 4}   On May 29, 2014, the human resources department offered appellant four positions within ODPS but outside the section in which she had been working. However, appellant resigned on June 4, 2014. Appellant later alleged that she resigned due to a medical condition.

{¶ 5}   On June 4, 2014, appellant filed an application for unemployment benefits. On July 11, 2014, ODJFS issued a redetermination, finding that appellant quit her job without just cause. Appellant appealed the redetermination. On August 29, 2014, a hearing officer for ODJFS held a hearing. On September 8, 2014, ODJFS' hearing officer found that appellant had quit her employment without just cause. The commission affirmed the hearing officer's decision on October 22, 2014, by disallowing further review.

{¶ 6}   Appellant appealed the commission's decision to the common pleas court. On April 6, 2015, the court issued a judgment affirming the commission's denial of unemployment compensation. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

> [I.]   The Trial Court Committed Error in Determining that Appellee Did Not Have Just Cause to Quit Based on Her Un-Remedied Hostile Work Environment.

> **[II.]** The Trial Court Committed Error in Not Determining why Appellant Did Not Provide Notice of Her Medical Condition.

{¶ 7} Appellant argues in her first assignment of error that the trial court erred when it determined that she did not have just cause to quit based on the un-remedied hostile work environment. A trial court and an appellate court employ the same, well-established standard of review in appeals involving the commission: "[A] reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995); R.C. 4141.282(H). When a reviewing court (whether a trial or appellate court) applies this standard, it may not make factual findings or determine witness credibility. *Irvine v. State Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). Factual questions remain solely within the commission's province. *Tzangas* at 696. Thus, a reviewing court may not reverse the commission's decision simply because "reasonable minds might reach different conclusions." *Irvine* at 18. The focus of an appellate court when reviewing an unemployment compensation appeal is on the commission's decision, not the trial court's decision. *Moore v. Comparison Mkt., Inc.*, 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8. In determining whether a commission's decision is or is not supported by the manifest weight of the evidence, this court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

{¶ 8} R.C. 4141.29(D)(2)(a) provides that an applicant is not eligible for unemployment compensation benefits if "[t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work." The term "just cause," in this context, is defined as " 'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist.1975). A significant factor in assessing whether an employee resigned with just cause is the employee's fault in creating the situation that led to the resignation. *Stapleton v. Dir., Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473 (7th Dist.). In cases in which an employee

encounters circumstances that might force resignation, the employee must first notify the employer of problems prior to resigning or risk a finding of resignation without just cause. *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300 (10th Dist.1996). The purpose of such notice is to provide the employer an opportunity to resolve the conflict before the employee is forced to resign. *Id.* at 307. Notice to the employer, however, is not alone enough to establish just cause; the employer must have a realistic opportunity to correct the problem. *Underhill v. Unemp. Comp. Rev. Comm.*, 10th Dist. No. 10AP-617, 2011-Ohio-1598, ¶ 19.

{¶ 9} However, where an employee's initial complaints do not prompt the employer to change her working conditions, the employee may be relieved of her duty to further pursue internal remedies. *Krawczyszyn v. Ohio Bur. of Emp. Servs.*, 54 Ohio App.3d 35, 37 (8th Dist.1988). Likewise, an employee need not indefinitely subject herself to the hostile working conditions while waiting for her employer to respond. *Id.*

{¶ 10} Appellant argues that the highway patrol did not adequately handle her second sexual harassment complaint, which involved the same supervisor as in the first complaint and occurred six months after the first complaint. Appellant claims that when her first complaint was found to have merit, the highway patrol should have taken immediate and effective steps to ensure that she did not suffer from continued harassment. Appellant asserts that once it became clear that her employer had not taken effective steps to remedy the environment, she had just cause to quit.

{¶ 11} We find no error in the common pleas court's and commission's decisions in this respect. Appellant's employer investigated her initial claim for harassment and then disciplined Sergeant Robinson. Appellant fails to explain how the highway patrol's handling of her first harassment complaint was insufficient. Although she alleged in a second harassment complaint that Sergeant Robinson's harassment continued, that case was not yet substantiated and her employer was investigating it. After appellant lodged her second complaint and returned to work following her medical leave, the highway patrol transferred her to a different office. After she returned to work, the highway patrol offered her four separate positions in different areas than she had previously worked. Although appellant contends that the highway patrol should have taken immediate and "effective" steps to ensure that she did not suffer from continued harassment, the highway patrol did take immediate steps. Whether they were effective or not is still unknown, as

appellant's allegations were unconfirmed and she quit before they could be substantiated. Importantly, appellant presents no evidence that her employer was aware that the harassment was allegedly continuing prior to the time she raised her second complaint. When she did initiate her second complaint, the highway patrol took immediate action to remove her from the allegedly harassing environment pending its investigation and offered her other permanent positions thereafter. Appellant fails to convince us that the highway patrol's actions were not appropriate under the circumstances. For these reasons, we find appellant's argument without merit, and we overrule her first assignment of error.

{¶ 12} Appellant argues in her second assignment of error that, even if we determine that she did not have just cause to quit when the highway patrol failed to remedy her work environment, as we did under her first assignment of error, we must still reverse the common pleas court's decision because it failed to address why she did not notify her employer about her medical condition and whether that failure to notify was reasonable.

{¶ 13} The Supreme Court of Ohio has stated:

> An employee's voluntary resignation on the basis of health problems is without just cause * * * when the employee is physically capable of maintaining a position of employment with the employer, but fails to carry her burden of proving that she inquired of her employer whether employment opportunities were available which conformed to her physical capabilities and same were not offered to her by the employer.

*Irvine* at syllabus.

{¶ 14} In *DiGiannantoni*, which appellant relies on, this court discussed *Irvine*:

> In *Irvine*, the court found the record failed to demonstrate that claimant gave her employer "sufficient timely notice" of her medical restrictions so that it could find a less demanding position for her. *Id.* at 18. When the foregoing excerpt is read in conjunction with its definition of "just cause," *Irvine* found an ordinarily intelligent person with a health problem would not quit their employment without first notifying their employer of the problem and thus giving the employer an opportunity to make suitable arrangements. See *Thake v. Unemployment Comp. Bd. of Review* (1990), 67 Ohio App.3d 503, 505-506 (where claimant failed to give employer sufficient notice of her continuing problem, she quit without

just cause and was therefore unentitled to unemployment benefits). See, also, *Wilson v. Ohio Bur. of Emp. Serv.* (Nov. 19, 1986), Summit App. No. 12651, unreported (citing *Irvine*, court found employee who quit because of employer's religious lectures and temperamental outbursts quit without just cause where employee failed to discuss problems with employer and to give employer an opportunity to correct them before quitting).

*DiGiannantoni* at 306-07. Thus, we summarized Ohio law in *DiGiannantoni* as follows:

Given the foregoing, we are constrained to find under Ohio statutory law that generally employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment. Essentially, an employee must notify the employer of the problem and request it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to quit without just cause and, therefore will not be entitled to unemployment benefits.

*Id.* at 307.

{¶ 15} In her second assignment of error, appellant relies on the portion of *DiGiannantoni* in which we explained that, "in applying the notice element of *Irvine*, the critical issue underlying whether an employee has quit with just cause is not whether notice was given, but rather whether an ordinarily intelligent person would have quit without giving notice under the circumstances of the case." *Id.* at 308, citing *Irvine* at 17. "In addressing the issue, [a] board needs to consider the nature of the problem, the person to whom [the employee] would need to address her concerns, and whether notice to that person would have been a futile act." *Id.*

{¶ 16} Here, it is undisputed that appellant failed to give any notice to her employer of her medical condition before quitting her employment. Appellant contends that she did not notify her employer of her medical condition because it would have been a futile act to give notice of a medical condition to an employer who had already failed to take effective action when notified of the hostile work environment that caused the medical condition and had just informed her that she was "too sensitive" for filing a complaint with the Ohio Civil Rights Commission. Appellant argues that the common

pleas court should have addressed this issue instead of applying a "per se rule" stemming from *Irvine* that, absent such notice, claims for unemployment benefits must be denied.

{¶ 17} However, we believe the requirement explained in *DiGiannantoni* that a board must consider the nature of the problem, the person to whom the employee would need to address her concerns, and whether notice to that person would have been a futile act, was implicit in the commission's and common pleas court's decisions regarding what an ordinarily prudent person would do under the same or similar circumstances. By concluding that appellant failed to give notice to her employer of her medical condition, the commission and common pleas court implicitly found that the exception to the notice requirement from *Irvine* did not apply. We agree with that conclusion. One situation we cited in *DiGiannantoni* that should excuse an employee from notifying her employer of a problem and giving it an opportunity to solve the problem is when an employee has no one to whom she can report the incident but the harassing employer. In the current case, appellant was not required to report the incident to the harassing co-worker(s) but, instead, lodged her complaints with a separate human resources department. Upon both complaints, an investigation was launched, and, with regards to the first complaint, the supervisor was disciplined. The second investigation had not been completed at the time of appellant's resignation. Thus, the record supports a finding that the human resources department would have continued to take action on any complaints. There is no evidence in the record that notice to her employer that she had a medical condition would have been a futile act, or that her employer would have ignored her medical condition and not acted on such to resolve any issues and accommodate appellant. The human resources department responded appropriately to her sexual harassment complaints, and appellant fails to offer any evidence that it would not have responded appropriately to her claim of a medical condition. For these reasons, we must find appellant's argument without merit, and we overrule her second assignment of error.

{¶ 18} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

_____