[Cite as *Barrett v. Dir., Ohio Dept. of Job & Family Servs.*, 2022-Ohio-2152.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charlton L. Barrett, | : | |
| Appellant-Appellant, | : | No. 21AP-532 |
| | | (C.P.C. No. 21CV-2881) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Director, Ohio Department of Job and Family Services et al., | : | |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 23, 2022

**On brief:** *Charlton L. Barrett*, pro se. **Argued:** *Charlton L. Barrett.*

**On brief:** *Dave Yost*, Attorney General, and *David E. Lefton,* for appellee Director, Ohio Department of Job and Family Services. **Argued:** *David E. Lefton.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Appellant, Charlton L. Barrett, appeals from a judgment of the Franklin County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission ("Commission"). The Commission concurred with a determination of appellee Ohio Department of Job and Family Services, Office of Unemployment Compensation ("ODJFS") disallowing Barrett's claim for unemployment compensation benefits based on its finding that Barrett quit his employment without just cause. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} The facts of this case are not in dispute.[1] Barrett was employed by TPUSA, Inc. ("TPUSA") from April 13 to May 1, 2020 as a financial customer service representative. When Barrett first applied for the position, he was seeking a work-from-home position because, according to Barrett, he has asthma and COPD (chronic obstructive pulmonary disease), conditions which Barrett contends make him a high risk for contracting COVID-19. Nevertheless, Barrett was told by TPUSA that the financial customer service position was not a work-from-home position, and Barrett accepted TPUSA's offer of employment for this position knowing it was not a work-from-home position.

{¶ 3} On April 22, 2020, Barrett spoke to his trainer, Ed, about getting "ADA paperwork," and Ed escorted Barrett to the Human Resources ("HR") office at TPUSA. Barrett also scheduled an appointment with his doctor for Friday, April 24, 2020. Barrett received a message from his doctor via "MyChart" advising that the office was limiting in-person visits due to COVID-19 and that his appointment would be changed to either a telephone or video visit, and that Barrett could "either mail or fax over [his] requested forms for me to complete." (June 15, 2021 Record of Proceedings E3309 K13.)

{¶ 4} On April 23, 27, and 29, 2020, Barrett knocked on the door of the HR office, which was locked, hoping to speak with HR personnel about receiving ADA accommodations to work from home due to his lung conditions and to obtain the ADA paperwork in pdf format so he could send it to his doctor. No one answered the door on any of the three occasions and Barrett did not pursue the matter further.

{¶ 5} On May 1, 2020, Barrett felt "a little bit off" when he woke up in the morning, but he was able to go to work. (Apr. 22, 2020 Tr. at 192.) When he arrived at TPUSA, he felt better and did not have a temperature when his temperature was taken during the daily temperature check. Later that same day during his training session, Barrett became sick to his stomach. Although he tried to continue with the training session, he became feverish,

---

[1] Although in his brief Barrett contends "[t]he initial Determination date is missing from the record" and the trial court is incorrect in stating "that July 15, 2020 is the initial Determination date," it is Barrett's assertion that is incorrect. He appears to believe that because he was initially paid unemployment benefits, the date he was first paid or received benefits must be the "initial Determination" date–but this is not correct. In any event, Barrett's misunderstanding has no bearing on the legal issues.

dizzy, and lightheaded. Barrett told his trainers he was not well and needed to go home, and Barrett was excused from work and went home. Barrett did not communicate with anyone in the HR office about the fact that he was leaving work due to illness before he left on May 1, 2020.

{¶ 6} Barrett called his doctor's office on May 1, 2020 to schedule an appointment, and according to Barrett, he was told that, because he was experiencing symptoms of COVID-19, he would need to quarantine for 14 days and then see a doctor via video conference. According to Barrett, the doctor's office did not provide any documentation of this conversation, and the record is devoid of any documentation that Barrett's doctor's office instructed him to quarantine or that his doctor was unable to see him until after the quarantine period.

{¶ 7} On May 5, 2020, Barrett left a voicemail message with TPUSA. In the message, Barrett stated that he was not feeling well and that his doctor had instructed him to quarantine for 14 days, and he asked when he might return to work. According to Barrett, no one from TPUSA returned his phone call, and he did not try to reach anyone at TPUSA after May 5, 2020.

{¶ 8} On May 14, 2020, Barrett was seen at his doctor's office by video conference. The record evinces that Barrett submitted a print-out from his "MyChart" patient portal to demonstrate that he was seen at OhioHealth Primary Care Physicians on May 14, 2020. The document does not, however, explain why Barrett was seen at the doctor's office on May 14, 2020, and the document does not establish that May 14, 2020 was the earliest date when Barrett could be seen at his doctor's office.

{¶ 9} On June 2, 2020, according to Barrett, he was seen by a pulmonologist, who advised Barrett not to return to work. Barrett did not submit any documentation from the pulmonologist to TPUSA, and the record is devoid of any such documentation.

{¶ 10} After Barrett left work on May 1, 2020, he did not return to work at TPUSA, and on June 4, 2020, he applied to ODJFS for unemployment compensation benefits. Barrett received benefits totaling $834 for the weeks ending May 16 through June 20, 2020.

{¶ 11} On July 15, 2020, ODJFS issued an initial Determination disallowing Barrett's application for unemployment compensation benefits based on a finding that he

quit his employment with TPUSA without just cause. Barrett appealed the initial Determination.

{¶ 12} On March 5, 2021, the Director of ODJFS issued a Redetermination which affirmed the initial Determination and disallowed Barrett's application for unemployment compensation benefits based upon a finding that Barrett quit his employment with TPUSA without just cause. Barrett appealed the Redetermination, whereupon the Director of ODJFS transferred jurisdiction to the Commission.

{¶ 13} On April 16, 2021, a Hearing Officer of the Commission conducted an evidentiary hearing via telephone. Barrett appeared at the hearing and provided testimony as reflected in the foregoing recitation of the facts. A representative of TPUSA did not appear at the hearing.

{¶ 14} On April 29, 2021, the Hearing Officer issued a Decision affirming the Redetermination, finding that Barrett had quit his employment without just cause, thereby precluding him from continuing to receive unemployment compensation, and disallowing Barrett's application for unemployment compensation benefits. On the same day, Barrett filed a request for further review.

{¶ 15} On May 5, 2021, the Commission issued a final decision which denied the request for further review. On May 8, 2021, Barrett appealed the Commission's final decision to the Franklin County Court of Common Pleas pursuant to R.C. 4141.282.

{¶ 16} The parties completed briefing and submitted it to the trial court. On October 15, 2021, the Franklin County Court of Common Pleas issued its decision and judgment entry affirming decision of Ohio Unemployment Compensation Review Commission and notice of final appealable order ("Decision and Judgment Entry"). In affirming the Commission's order, the trial court noted that the transcript of the administrative hearing made clear that Barrett accepted employment with TPUSA for the financial customer service representative position despite initially inquiring about a work-from-home position and being told the position was not work-from-home. (Decision & Jgmt. Entry at 10.) The trial court found that Barrett "did not communicate to TPUSA that he required accommodations because of his lung conditions." *Id.* at 10-11. The trial court further found that Barrett:

[L]eft work on May 1, 2020, and he presented no evidence that a medical professional recommended that he quarantine due to COVID-19, or that he not return to work for health reasons. [Barrett] did not contact TPUSA after May 5, 2020 and did not attempt to return to his job at TPUSA. An "ordinarily intelligent person" would have contacted his or her employer about returning to work after an alleged quarantine period. [Barrett] failed to act as an ordinarily intelligent person would have acted, and the Commission did not err in disallowing his application for unemployment-compensation benefits.

*Id*. at 11.

{¶ 17} Barrett now timely appeals.

## II. Assignment of Error

{¶ 18} Barrett assigns the following error for our review:

The trial court erred in affirming the Decision of the Commission because such Decision was unlawful, unreasonable, and/or against the manifest weight of the evidence.

## III. Analysis

{¶ 19} In his sole assignment of error, Barrett argues the trial court erred in affirming the order of the Commission that denied his claim for unemployment compensation benefits.

{¶ 20} R.C. 4141.282 governs appeals from decisions of the commission to the court of common pleas and provides as follows:

The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

R.C. 4141.282(H).

{¶ 21} On appeal, a reviewing court may reverse a just-cause determination by the commission only if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694

(1995), paragraph one of the syllabus; R.C. 4141.282(H). The reviewing court "is not permitted to make factual findings or reach credibility determinations." *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 7, citing *Tzangas* at 696, citing *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985). Similarly, a reviewing court may not substitute its judgment on factual findings or credibility determinations for that of the commission. *Id.*, citing *McCarthy v. Connectronics Corp.*, 183 Ohio App.3d 248, 2009-Ohio-3392, ¶ 16 (6th Dist.), citing *Irvine* at 18. Instead, a reviewing court must determine whether the commission's decision is supported by the evidence in the record. *Houser* at ¶ 7, citing *Irvine* at 18. The focus of the analysis, therefore, is on the commission's decision rather than the decision of the common pleas court. *Id.*, citing *Carter v. Univ. of Toledo*, 6th Dist. No. L-07-1260, 2008-Ohio-1958, ¶ 12. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. Thus, this court "must affirm the commission's finding if some competent, credible evidence in the record supports it." *Williams v. Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20. Put another way, "a reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.' " *Id.*

{¶ 22} A claimant bears the burden of proving his or his entitlement to unemployment compensation benefits. *Houser* at ¶ 8, citing *Irvine* at 17. In this case, the Commission denied Barrett's claim for unemployment benefits on the grounds that he voluntarily quit his employment without just cause.

{¶ 23} Pursuant to R.C. 4141.29(D)(2)(a), a claimant is ineligible to receive unemployment benefits if "[t]he individual quit work without just cause." *Houser* at ¶ 8. " 'Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Houser* at ¶ 8, quoting *Irvine* at 17. Whether just cause exists depends on the factual circumstances of each case. *Id.*, citing *Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 207 (1991). "Therefore, a just cause determination is primarily an issue to be resolved by the trier of fact." *Id.*, citing *Stark Area Regional Transit Auth. v. Dir., Ohio Dept. of Job & Family*

*Servs.*, 187 Ohio App.3d 413, 2010-Ohio-2142, ¶ 20 (5th Dist.), citing *Irvine* at 17. "A just cause determination must be consistent with the purpose of the Unemployment Compensation Act, which is to provide financial assistance to individuals who become and remain involuntarily unemployed due to adverse business and industrial conditions." *Brooks v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 08AP-414, 2009-Ohio-817, ¶ 12, citing *Tzangas* at 697. "The act protects those employees who have no control over the situation that leads to their separation from employment." *Id.*, citing *Tzangas* at 697.

{¶ 24} A significant factor in determining whether an employee had just cause to resign is the employee's fault in creating the situation that led to his or her resignation. *Watkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-479, 2006-Ohio-6651, ¶ 21, citing *Stapleton v. Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473 (7th Dist.). "Thus, 'an employee is required to cooperate with the employer to resolve work-related problems. * * * If the employee does not cooperate or give the employer sufficient time to accommodate the employee's needs or concerns, that employee will usually not be found to have just cause if he or she quits.' " *Id.*, quoting *Stapleton* at ¶ 32, citing *Irvine* at 18. "As a result, 'employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment.' " *Watkins* at ¶ 22, quoting *Shephard v. Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 2006-Ohio-2313, ¶ 26 (8th Dist.) " 'Essentially, an employee must notify the employer of the problem and request it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to quit without just cause and therefore will not be entitled to unemployment benefits.' " *Id.*, quoting *Shephard* at ¶ 26.

{¶ 25} Here, Barrett has not met his burden of proving his entitlement to unemployment compensation benefits. Although he argues he was justified in resigning his position with TPUSA because TPUSA allegedly failed to accommodate his lung conditions, the record shows Barrett never supplied any documentation to TPUSA showing he had covered medical conditions and required an accommodation. The record further shows Barrett never had any discussions with TPUSA's HR personnel about any accommodations. Although Barrett blames TPUSA's HR personnel for not answering their

locked door, he fails to explain why he did not try to contact them some other way–such as by calling, leaving a message, or sending an email–to make an appointment to have such a discussion.

{¶ 26} Moreover, the undisputed evidence shows that after leaving his voice message with TPUSA on May 5, 2020, Barrett never tried to contact TPUSA about coming back to work. This evidence–to which Barrett testified and readily admits–is indeed "some evidence" that justifies the Commission's conclusion that he voluntarily quit the job without just cause, because an "ordinarily intelligent person" would have contacted his employer to find out when and how he could come back to work after he was done with his COVID-19 quarantine. Under these facts, Barrett did not make reasonable efforts to stay employed. *Watkins* at ¶ 22. *See also Reier v. Dir., Ohio Dept. of Job & Family Servs.*, 3d Dist. No. 17-03-08, 2003-Ohio-3723, ¶ 10 (noting the claimant "must make a reasonable attempt to stay on the job if feasible to do so"). Thus, competent, credible evidence shows Barrett voluntarily abandoned his job without just cause, and he is therefore not entitled to unemployment compensation benefits.

{¶ 27} In short, having reviewed the record, we find competent, credible evidence exists to support the Commission's determination that Barrett voluntarily resigned his employment without just cause. Accordingly, the Commission's decision denying Barrett's claim for unemployment benefits is not unlawful, unreasonable, or against the manifest weight of the evidence, and the trial court did not err in affirming the denial. Accordingly, we overrule Barrett's sole assignment of error.

## IV. Disposition

{¶ 28} Having overruled Barrett's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and MENTEL, JJ., concur.

————————————